# Illinois Official Reports

## Appellate Court

---

### *Souza v. City of West Chicago*, 2021 IL App (2d) 200047

---

| | |
|---|---|
| Appellate Court Caption | DAVID SOUZA, JEFFREY POSADZY, ATCHERSON ASSOCIATION, and ALL OTHERS SIMILARLY SITUATED, Plaintiffs-Appellants, v. THE CITY OF WEST CHICAGO and WATER RESOURCES, INC., Defendants-Appellees. |
| District & No. | Second District No. 2-20-0047 |
| Filed | March 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 19-MR-0164; the Hon. Paul M. Fullerton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | George L. Acosta, of Acosta & Associates, of St. Charles, for appellants. |
| | Sean Conway, Mary E. Dickson, and Patrick K. Bond, of Bond, Dickson & Conway, of Wheaton, for appellee City of West Chicago. |
| | Jeffrey A. Risch and Steven W. Jados, of SmithAmundsen LLC, of St. Charles, and Michael Resis, of SmithAmundsen LLC, of Chicago, for other appellee. |

Panel                    JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, David Souza, Jeffrey Posadzy, and Atcherson Association, on behalf of themselves and all others similarly situated, appeal the trial court's decision granting the motion for judgment on the pleadings under section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2018)) filed by defendant, the City of West Chicago (City), as well as its earlier decision granting the motion to dismiss under section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)) filed by defendant, Water Resources, Inc. (Water Resources). At issue on appeal, generally, is whether the court correctly determined that the City's home rule authority permits it to exempt itself, via an amended ordinance passed after the amended complaint in this case was filed, from statutory requirements concerning water-utility billing. In addition, we are asked to consider whether the City's ordinance may be applied retroactively. Finally, plaintiffs challenge the court's dismissal of the counts against Water Resources. For the following reasons, we affirm.

¶ 2                              I. BACKGROUND
¶ 3                   A. Complaint Allegations and City Ordinance
¶ 4    On February 14, 2019, Souza and Posadzy filed a three-count class action complaint against defendants, alleging that plaintiffs Souza, Posadzy, and all potential class members were residential water-service customers and that the City, a municipality formed under the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2018)),[1] had engaged in unlawful billing practices, charging them for water and sewer services outside of the 12-month period prescribed by the water-utility billing provision of the Municipal Code, section 11-150-2 (*id.* § 11-150-2).[2] Specifically, the complaint alleged that the City owned a water and sewage system that provided services to residential and commercial properties within City boundaries.

---

[1]There is no dispute that the City is a home rule unit.

[2]For context, we note upfront that section 11-150-2 of the Municipal Code provides:

"On or after the effective date of this amendatory Act of the 100th General Assembly, the corporate authorities of any municipality operating a waterworks or combined waterworks and sewerage system

(1) shall bill for any utility service, including previously unbilled service: (A) within 12 months after the provision of that service to the customer if the service is supplied to a residential customer; or (B) within 24 months after the provision of that service to that customer if the service is supplied to a non-residential customer; however, the corporate authorities of a municipality may bill for unpaid amounts that were billed to a customer or if the customer was notified that there is an unpaid amount before the effective date of this amendatory Act of the 100th General Assembly [(August 18, 2017)] for service that was supplied to the customer before January 1, 2016[.]" 65 ILCS 5/11-150-2(a)(1) (West 2018).

In July 2011, defendants contracted with Water Resources to replace residential water meters, update meter equipment, and implement electronic advancements that would benefit customers by allowing electronic access to monitor water consumption. Shortly after the equipment installation, the City learned that numerous customers were experiencing deficient, inaccurate, and/or missing water meter readings. After experiencing *years* of these errors, the City terminated its contract with Water Resources, effective July 30, 2016. However, despite the water-meter and software malfunctions, the City attempted to bill and collect water-usage charges from affected residents.

¶ 5    The complaint's first two counts sought declaratory and injunctive relief and economic damages from the City, based on the City's attempt to bill more than 12 months after the alleged usage, in contravention of section 11-150-2's restriction, effective August 18, 2017, that billing must occur within 12 months of the service provided. Plaintiffs alleged that, since 2013, the City issued bills for services that were provided several *years* prior to the invoice. In the third count, plaintiffs sought economic damages from Water Resources for breach of its contract with the City, premised upon plaintiffs' alleged status as third-party beneficiaries of that contract. Plaintiffs alleged that, to the extent that the City's billing was based on a breach of contract occasioned by Water Resources, plaintiffs, as third-party beneficiaries to that contract, were entitled to recover all service charges wrongfully billed and/or collected by the City. A few days later, plaintiffs moved for class certification.

¶ 6    On March 19, 2019, plaintiffs filed an amended complaint, adding Atcherson Association as a nonresidential plaintiff and adding two counts relating to section 11-150-2's requirement that nonresidential customers be billed within 24 months of the service. Counts III and VI of the amended complaint pertained to Water Resources, again alleging third-party beneficiary breach-of-contract claims related to the City's contract with Water Resources.

¶ 7    On March 26, 2019, the court granted the City's earlier-filed motion for an extension of time to answer the complaint, ordering a response by May 22, 2019.

¶ 8    Between the court's March 26, 2019, order, and the May 22, 2019, response due date, the City amended its local ordinance concerning billing practices. Specifically, on April 15, 2019, the City amended section 18-37 of the West Chicago Code of Ordinances (City Code) with ordinance No. 19-O-0010 (Ordinance). See West Chicago Ordinance No. 19-O-0010 (eff. Apr. 15, 2019) (amending West Chicago Code of Ordinances § 18-37). (The amended ordinance is summarized in the next section).

¶ 9                    B. Responsive Motions and Court Rulings Thereon

¶ 10    On April 5, 2019, Water Resources filed a section 2-619(a)(9) (735 ILCS 5/2-619 (a)(9) (West 2018)) motion to dismiss the amended complaint, arguing that plaintiffs lacked standing to bring claims against it, as plaintiffs were not parties to its contract with the City. Attaching the contract to its motion, Water Resources argued that a third party may sue for breach of contract only if the actual parties to the contract intended to confer upon the third party a "direct benefit" and that mere incidental benefits were insufficient to sustain a cause of action. Water Resources disagreed with plaintiffs' conclusory complaint allegation that they were third-party beneficiaries of the contract, noting that nothing in the contract expressed any intent to protect plaintiffs from improper *billing* practices that the City might perform. Rather, the intent of the contract was for Water Resources to upgrade almost 7000 water meters managed by the City, as well as its hardware and software, and, therefore, any benefit to plaintiffs from the contract

was merely incidental. In short, Water Resources argued, the contract "simply does not address any intent to provide a benefit to [p]laintiffs with respect to the alleged harm at issue in the instant lawsuit." On June 5, 2019, the court agreed, and it dismissed counts III and VI against Water Resources. In so doing, it noted that virtually every contract into which a city enters is for the benefit of its citizens but that those contracts do not all provide citizens third-party beneficiary status. Here, the court found, the contract's purpose was to provide good working water meters and technology for the City and its citizens but the benefit to citizens was incidental, not direct.

¶ 11 On May 22, 2019, the City filed its section 2-615(e) motion for judgment on the pleadings as to counts I, II, and V of the amended complaint. The City conceded that, since 2013, it had to delay issuing water bills to many of its customers. It explained that, in 2011, the City contracted with Water Resources to implement an "Advanced Metering Infrastructure," which required installation of new smart water meters, radio signal transmission devices, and other infrastructure that could deliver "real time" meter reads to the City through installed software. According to the City, Water Resources was to ensure that the software (which compiled meter-usage data) interfaced with the City's billing software, so as to allow the City to automatically issue bills. Almost immediately, numerous problems ensued with the installed hardware, and significant software-interfacing and hardware errors impacted the City's ability to provide timely billing to its customers. Accordingly, as the meter issues persisted for years, the City agreed that some water bills were issued to customers more than one year after the water service was provided. The City noted that it continued to attempt to bring its customer accounts current.

¶ 12 However, even assuming that the amended complaint's allegations were true, the City argued that it was, nevertheless, entitled to judgment on the pleadings, *i.e.*, as a matter of law, for two reasons. First, it argued, its exercise of home rule authority under section 18-37 of the City Code (West Chicago Code of Ordinances § 18-37 (amended Apr. 15, 2019)), as amended by the Ordinance, controlled over section 11-150-2 of the Municipal Code. Alternatively, the City argued that the procedural commands in section 11-150-2 of the Municipal Code are merely directory, precluding plaintiffs' requested relief. It further explained:

"[S]ection 11-150-2 sets forth certain procedural commands concerning municipal water billing practices, [but] it contains no explicit limitations on the power of home rule municipalities or any consequence to home rule or non-home rule municipalities for the failure to strictly follow the procedural commands therein. Concurrently, section 18-37(a)(3) of the City Code provides for the City's water billing practices. Section 18-37(a)(3) was recently amended by City Ordinance No. 19-O-0010 and likewise sets forth certain procedural commands concerning the City's billing practices. Section 18-37 of the City Code has never contained a consequence for the City's failure to follow the procedural commands set forth therein."

¶ 13 The Ordinance provides, in sum:

"The aforesaid rates apply to bimonthly billing periods, *or as otherwise determined by the city administrator* or his designee, and the charge shall be based upon meter readings, provided however, that the minimum charge set forth is as above. The reading device on the meter shall be considered the primary reader and will be used for billing if different than the remote reader. For cases of faulty meters or unmetered service, the minimum charge plus a usage estimate by the director of administrative services or his

- 4 -

designee shall establish the charges. All charges provided herein may be billed bimonthly. *Failure to bill any charges provided herein on a bimonthly basis shall have no impact on liability for any outstanding usage charges incurred for any period of time.*" (Emphases added.) West Chicago Code of Ordinances § 18-37(a)(3) (amended Apr. 15, 2019).

¶ 14 In addition, the City noted that the Ordinance (again, amended after the amended complaint in this case was filed) also expressly provided that it (1) controlled over section 11-150-2 of the Municipal Code; (2) applied to any and all billed or unbilled charges incurred for water usage prior to and subsequent to the amended ordinance's effective date; and (3) applied to "any and all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review." Thus, the City concluded, "[t]here can be no question that section 18-37(a)(3) as amended by City Ordinance No. 19-O-0010 precludes [p]laintiffs' claims against the City." Moreover, the City argued that the language in the Municipal Code was merely directory, not mandatory, with no prescribed consequence for noncompliance.

¶ 15 Alternatively, the City also filed a section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss the complaint. In sum, the City argued that plaintiffs were seeking to avoid payment for consumed water and that the complaint should be dismissed because (1) plaintiffs had not identified a cognizable legal theory to support their claims for declaratory relief, (2) no cause of action had been alleged for the claims seeking injunctive relief and damages, (3) the claims for damages were barred by the *Moorman* doctrine (see *Moorman Manufacturing Co. v. National Tank Co.* 91 Ill. 2d 69 (1982)), and (4) plaintiffs fundamentally misunderstood the requirements of the statute at issue.

¶ 16 In separate responses to the motions, plaintiffs noted, in sum, that the State's express public policy when enacting section 11-150-2 was to protect consumers of municipally provided water services from being billed for services provided more than 12 months earlier. Plaintiffs argued that the provision's application to "any municipality operating a waterworks or combined waterworks and sewage system," included home rule municipalities. They noted that, after receiving a complaint concerning its violations of state requirements for public-utility billing, the City took three months to respond and, during that time, sought to "retroactively alter its utility ordinance and invoke its home rule status as a defense." Plaintiffs argued that the City's position was meritless and that home rule powers cannot preempt statewide concerns relating to utilities. Moreover, plaintiffs disagreed that the Municipal Code was directory, asserting that it was, instead, a "mandate to municipal providers to be put in the same regulatory footing as private utility providers."

¶ 17 In addition to other points raised, we note that, in its reply in support of its section 2-615(e) motion, the City, in a footnote, commented:

"Plaintiffs acknowledge the retroactive application of City Ordinance No. 19-O-0010 negating their claims for relief in this matter; yet, [p]laintiffs make no argument that City Ordinance No. 19-O-0010 is impermissibly retroactive. Notwithstanding, the retroactive effect of City Ordinance No. 19-O-0010 is permissible under Illinois law. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 *** (2001) ('[I]f the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent

must be given effect.'"). Ordinance 19-O-0010 clearly expresses its temporal reach and explains that it clarifies section 18-37 of the City Code."

It also noted that plaintiffs did

"not dispute that they have no fundamental right to complimentary water usage and service. Moreover, untimely water billing does not affect plaintiffs' ability to evaluate and contest the reasonableness of charges. *** [A]ny economic hardship occasioned by a delayed water bill can be remedied through extended payment plans as authorized under section 18-30.1 of the City Code."

¶ 18    On September 10, 2019, the court held argument on the City's two motions.[3] Thereafter, on October 15, 2019, the court granted the City's section 2-615(e) motion for judgment on the pleadings. In its written memorandum decision, the court determined that two conflicting laws were at issue—section 11-150-2 (which contains billing timeframes) and the Ordinance (which does not contain billing timeframes)—but that the Ordinance governed because it was a valid exercise of the City's home rule authority, which section 11-150-2 did not expressly limit. Specifically, the court found that the City's water-billing practices were a function pertaining to its government and local affairs and that the Ordinance addressed unique problems that the City faced, for example, with defective water meters and missed meter readings. The court did not agree with plaintiffs' argument that municipal control over public utilities had been preempted by statewide control of public utilities, thus rendering the Ordinance void. Rather, the court found that the argument failed, in light of the absence of any express language in section 11-150-2 limiting home rule authority. The court noted, "home rule authority is not subservient to the doctrine of implied preemption," and "[u]nless there is a clear expression of preemption, home rule authority will stand." Although plaintiffs cited "ostensibly compelling" legislative history, which would reflect an intent to prevent back-billing in situations such as those alleged in this case, statutory interpretation principles did not permit the court to read into the statute a legislator's comments. Again, the court noted, the legislature was well-aware of its duty to use specific language to limit or deny home rule authority. The court determined that, because the Ordinance was a valid exercise of home rule power, the City was entitled to judgment as a matter of law. Moreover, because the court granted the section 2-615(e) motion, it found no need to address the City's alternative section 2-615 motion and ordered it stricken as moot.

¶ 19                          C. Postjudgment Motions

¶ 20    On November 12, 2019, plaintiffs filed a "motion to limit the scope of [the trial] court's October 15, 2019[,] ruling and to strike as unconstitutional any retroactive application of the City's newly amended ordinance." In the motion, plaintiffs argued that the court admittedly ruled on two contradictory laws but did not address that the Ordinance was adopted *after* the state law and, further, *after* the amended complaint had been filed in this case. Plaintiffs argued that the court made no finding concerning how applying the Ordinance retroactively might deprive them of vested abatement rights granted under state law before the Ordinance's passage. Plaintiffs argued that permitting retroactive application of the Ordinance would

---

[3]We note that, during argument, plaintiffs pointed out that the City had amended the Ordinance to purportedly have retroactive application. The City responded that retroactive application was valid and that plaintiffs did not assert otherwise.

violate their due process rights and, while expressly claiming that they were not waiving their underlying position that state law expressly preempts the City's contradictory home rule ordinance, asked the court to limit the breadth and scope of its judgment and to apply the Ordinance only prospectively.

¶ 21 The next day, November 13, 2019, plaintiffs filed a motion for reconsideration. They argued that the court's judgment constituted a misapplication of existing law, that it effectively allowed the "fox to guard the hen house," and that the court should reverse the judgment and deny the section 2-615(e) motion in its entirety.

¶ 22 On November 20, 2019, the City moved to strike plaintiffs' motion for reconsideration, arguing that it violated Illinois Supreme Court Rule 274 (eff. July 1, 2019) in that the rule permitted only one postjudgment motion. In a separate motion, the City also moved to strike plaintiffs' motion to limit the scope of the court's judgment, arguing, in sum, that the issues raised therein (namely, the constitutionality of the Ordinance's retroactive application) were being improperly raised for the first time postjudgment and, accordingly, were forfeited.

¶ 23 In response, plaintiffs specified that their motion to limit the scope was *not* a motion to reconsider but, rather, it was a motion to *modify* the judgment and was being brought pursuant to section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2018) (the trial court "may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable")). Section 2-1301(e), plaintiffs argued, simply considered whether substantial justice was done between the litigants. Further, plaintiffs noted that the issue of retroactivity did not arise until the City mentioned it in a footnote in its reply in support of the motion for judgment on the pleadings and that, thus, plaintiffs did not have an opportunity to respond. In any event, they argued, the court itself was *required* to perform constitutional scrutiny of an attempt to retroactively apply a changed law and, here, the court did not, in its decision, perform that analysis.

¶ 24 On November 20, 2019, the court entered an order granting plaintiffs leave to withdraw their motion to reconsider, filed November 13, 2019, "without prejudice to assert arguments made therein on any appeal."

¶ 25 On December 17, 2019, the court held oral argument on plaintiffs' motion to limit the scope of the judgment. It granted the City's motion to strike; however, it also denied on the merits plaintiffs' motion to limit the scope of the judgment. The court explained that it agreed with the City that section 2-1301(e), which allows a court to set aside a judgment, does not permit modification of a judgment and that, thus, plaintiffs improperly used it and should have instead filed the motion under section 2-1203(a) of the Code (*id.* § 2-1203(a) ("In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.")). However, the court agreed with plaintiffs that, regardless of the motion's label, it was, nevertheless, appropriate for the court to consider the arguments on their merits. Doing so, it rejected plaintiffs' arguments, finding their cited cases distinguishable and noting that curative legislation is permissible, legislative intent formed the primary consideration in a retroactivity analysis (as opposed to vested rights, as plaintiffs had asserted), and the Ordinance was permissible. It found no unconstitutionality in the City's retroactive application of the Ordinance. Thus, the scope of its prior order was appropriate.

¶ 26    In accordance with the oral ruling, the written order granted the City's motion to strike on the basis that plaintiffs' motion to limit the scope of the judgment was not properly brought under section 2-1301(e). However, it held "additionally," having considered the merits of plaintiffs' motion to limit the scope of the order, the motion was denied.

¶ 27    On January 15, 2020, plaintiffs filed their notice of appeal.

¶ 28                                              II. ANALYSIS

¶ 29    Plaintiffs raise numerous arguments on appeal, which can be distilled into three overarching categories. First, plaintiffs challenge the propriety of the court's analysis and ruling that the Ordinance is a valid exercise of home rule authority and, thus, the City is not bound by section 11-150-2's requirements for water-utility billing. Second, plaintiffs challenge the court's denial of their motion to limit the scope of the judgment, resulting, they argue, in unconstitutional retroactive application of the Ordinance. Third, they challenge the propriety of the court's decision granting Water Resources' section 2-619 motion to dismiss, which had asserted that plaintiffs did not have standing to bring their claims, as they were not third-party beneficiaries to defendants' contract. We note that the City and Water Resources have filed separate appellee briefs.

¶ 30                                    A. Jurisdiction and Forfeiture

¶ 31    After plaintiffs filed their notice of appeal, the City moved this court to dismiss the appeal for lack of jurisdiction. On March 4, 2020, in a minute order, we denied the motion. The City has again challenged jurisdiction, and it also asserts that plaintiffs' arguments are forfeited. The denial of a motion to dismiss an appeal for lack of jurisdiction is not final, the question of our jurisdiction may be revisited at any time prior to our disposition of the appeal, and "we have the obligation to be certain of our jurisdiction before proceeding." *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 58 (1999); see also, *e.g.*, *Buffa v. Haideri*, 362 Ill. App. 3d 532, 536 (2005) ("we have an independent obligation to verify our jurisdiction over every appeal that is filed in this court"). Thus, we address this issue first.

¶ 32    The City asserts that plaintiffs' appeal is "too little too late" and must be dismissed because it (1) is untimely, (2) raises new legal arguments and theories for the first time on appeal, and (3) presents belated legal arguments "on a belated request for declaratory relief concerning an unpled challenge to the City's [o]rdinance in a postjudgment motion."

¶ 33    As to the first point, the City contends that the appeal is untimely because the trial court entered a final judgment on October 15, 2019, and the notice of appeal was filed more than 30 days later (specifically, on January 15, 2020). The City acknowledges that, on November 12, 2019, plaintiffs moved to limit the scope of the court's judgment, which the court substantively denied on December 17, 2019, but the City points out that the court also struck plaintiffs' motion as improperly filed under section 2-1301(e). The City argues that plaintiffs' motion did not request proper section 2-1301 relief and it was not a motion to reconsider under section 2-1203; thus it was not a motion directed against the judgment, as required by Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), and so did not toll the time for appeal. The City notes that plaintiffs' motion did not ask the trial court to set aside or vacate the judgment but, rather, it requested for the first time the court to declare the Ordinance unlawfully retroactive and to limit, on that basis, the scope of the final order.

¶ 34    This transitions into the City's second argument, *i.e.*, that plaintiffs' request to the court to deem the Ordinance unlawfully retroactive was not pleaded in their amended complaint and was a new legal theory raised for the first time after judgment was entered. The City notes that the motion did not request any modification of the judgment concerning the court's disposition of the claims pleaded in the complaint. According to the City, because plaintiffs never previously requested a declaration that the Ordinance was unconstitutionally retroactive, the court had no authority to grant their request, made for the first time in a postjudgment motion. The City concludes that, since the motion to limit the scope of the judgment was requesting, for the first time, new relief on an unpleaded claim, it was not sufficient to toll the time for appeal.

¶ 35    In addition, separate from timeliness, the City contends that we should dismiss the appeal because plaintiffs' arguments in opposition to the court's judgment are forfeited as being raised for the first time on appeal. For example, the City contends that plaintiffs argued below that the Ordinance must yield to the Municipal Code but that plaintiffs have abandoned that argument on appeal, instead arguing, for the first time, that the City lacked home rule authority to assess water charges, that the Ordinance did not pertain to the City's government and affairs, that the Ordinance was impliedly or expressly preempted by the Municipal Code, and that the Ordinance should be stricken because it interferes with section 11-150-2 of the Municipal Code and leads to absurd results. Similarly, in its third point, the City notes again that plaintiffs' arguments concerning the Ordinance's retroactivity were raised for the first time postjudgment. Thus, the City argues, those, too, are forfeited because it is improper to raise new arguments postjudgment. For the following reasons, we reject the City's arguments.

¶ 36    As described above, the City's challenges concern both jurisdiction and forfeiture. As to jurisdiction, the timely filing of a notice of appeal is both mandatory and jurisdictional. *Joseph v. Evergreen Motors, Inc.*, 2019 IL App (1st) 180360, ¶ 19. Rule 303(a)(1) provides, in part, that, when a party files a postjudgment motion, the notice of appeal must be filed "within 30 days after the entry of the order disposing of the last pending postjudgment motion *directed against that judgment or order*." (Emphasis added.) Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 37    The court's order, both striking plaintiffs' "motion to limit the scope" and substantively denying it, was a bit unusual. Nevertheless, we agree with plaintiffs that, regardless of whether the motion was filed pursuant to section 2-1203 or section 2-1301 of the Code, it was a motion directed against the judgment because it sought a substantive modification of the judgment. "A postjudgment motion extends the time for filing a notice of appeal under Rule 303(a)(1) only when it seeks rehearing, retrial, *modification* or vacation of the judgment, *or other similar relief*." (Emphases added.) *Heiden v. DNA Diagnostics Center, Inc.*, 396 Ill. App. 3d 135, 138 (2009). The City correctly points out that a motion is directed against the judgment only if it actually challenges the judgment, not when it merely requests a change to the language of the judgment (see, *e.g.*, *In re Estate of Russell*, 372 Ill. App. 3d 591, 594-95 (2007)), but the motion to limit the judgment's scope here was not requesting merely a superficial change. Namely, it requested that the court modify the judgment to include a constitutional assessment of the City's retroactive application of a newly enacted ordinance that was passed after plaintiffs filed their amended complaint. The requested modification had the potential to affect plaintiffs' relief, and, regardless of form or how and when the question arose, the court *agreed* that the requested analysis was required. It performed the substantive analysis but denied the motion.

The notice of appeal was filed within 30 days after the court's ruling, and therefore, it tolled the time to appeal. Our jurisdiction is proper.

¶ 38 Whether all of the issues raised on appeal (particularly those that were contemplated in the withdrawn motion to reconsider) are preserved is a question different from that of jurisdiction. We are mindful of the fact that, after plaintiffs filed their amended complaint, the City amended the Ordinance and then, instead of answering the complaint, moved for judgment on the pleadings. Thus, plaintiffs became respondents to the motion, thereby positioned only to respond to the allegations in the motion and were, therefore, somewhat constrained in what arguments could be proffered. Their overarching argument in opposition to the City's motion for judgment on the pleadings centered around their dispute that the City could validly assert home rule authority as a defense to Municipal Code regulations. The trial court ultimately sided with the City on that issue; plaintiffs were then presented with their first opportunity to dispute the *trial court's* rationale for its decision (including noting that the court's order had not addressed the propriety of applying the Ordinance retroactively). In their motion to limit the scope of the judgment, plaintiffs expressed that they did not intend to forfeit their other challenges to the merits of the court's judgment. They also filed a motion to reconsider the judgment, and although they ultimately withdrew that motion, the order itself allowed *conditional* withdrawal, *i.e.*, withdrawal under the condition that plaintiffs' arguments remained preserved for appeal. Without question, that court order was also unusual. A party generally preserves an issue by actually presenting it to the trial court, and so, it seems incongruous for the trial court here to order that an issue is preserved, even though it was not, ultimately, presented to the trial court. Indeed, we implore trial courts to carefully consider the impact of their orders, remaining mindful that they are not necessarily positioned to pronounce as preserved issues that are not or to bestow upon us jurisdiction where there is none. In any event, it is well-settled that the issue of forfeiture, as opposed to jurisdiction, is a limitation on the parties, not on this court. See, *e.g.*, *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22. All things considered, it strikes us as unfair to deny plaintiffs what the trial court specifically allowed, *i.e.*, the ability to raise these issues on appeal (even if the trial court was misguided in doing so).

¶ 39 As such, we conclude that we have jurisdiction over the appeal. Further, under these circumstances, forfeiture is not a basis for dismissal.

¶ 40 B. Standards of Review

¶ 41 We review *de novo* a motion for judgment on the pleadings (*Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005)), the constitutionality of an ordinance (*Wilson v. County of Cook*, 2012 IL 112026, ¶ 14), and a section 2-619 motion to dismiss (*Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 571 (2002)).

¶ 42 Judgment on the pleadings is proper where the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Gillen*, 215 Ill. 2d at 385. In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Id.* We take as true all well-pleaded facts and reasonable inferences. *Id.* On review, we must determine whether any issues of material fact exist and, if not, whether the movant was entitled to judgment as a matter of law. *Id.*

¶ 43    In addition, to the extent that the judgment on appeal concerns statutory interpretation, that, too, is a question of law to be reviewed *de novo*. See, *e.g.*, *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39 (2010). When interpreting statutes, we must ascertain and give effect to legislative intent, and we must presume that the legislature did not intend absurd results. See, *e.g.*, *In re Estate of Wilson*, 238 Ill. 2d 519, 561 (2010); *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008). "The best indicator of the legislative intent is the language in the statute, which must be given its plain and ordinary meaning." *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16. We must not interpret a statute in a manner that renders other statutory provisions meaningless (see, *e.g.*, *Wilson*, 238 Ill. 2d at 561), nor may we read into statutes exceptions, limitations, or conditions that the General Assembly did not express (see *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006)).

¶ 44                               C. Judgment on the Pleadings

¶ 45    On October 15, 2019, the trial court granted the City's motion for judgment on the pleadings, concluding, in sum, that the Ordinance reflected a valid exercise of its home rule authority and that, as section 11-150-2 did not expressly limit home rule authority, the statute's billing requirements did not preempt the Ordinance. Plaintiffs argue that the court's ruling is incorrect because, while both state and local legislation may attempt to regulate the same subject matter or issue, the concept of home rule authority generally provides a basis for local governments to tailor local solutions to *local* affairs. That concept does not make sense here, plaintiffs contend, because section 11-150-2 imposed requirements on the *local entity itself* in order to pursue a vital state interest of consumer protection. Therefore, plaintiffs argue, it is absurd to interpret home rule power as allowing a municipality to nullify a state mandate designed to regulate it by passing a directly contradictory ordinance. According to plaintiffs, it is critical here to identify (1) what or who is being regulated under the conflicting state and local laws, (2) what problem is being addressed by those laws, and (3) which unit of government has a more vital interest in regulating the issue. Doing so, plaintiffs argue, reveals that the Ordinance is not a valid exercise of home rule authority and that, even if it were, section 11-150-2 expressly limits that authority. For the following reasons, we disagree.

¶ 46                                1. Home Rule Authority

¶ 47    We first summarize pertinent constitutional and statutory provisions, as well as case law interpreting those provisions, concerning home rule authority. The 1970 Illinois Constitution bestows broad authority on home rule units. Article VII, section 6(a), states in part:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

¶ 48    Home rule is "based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs" (*Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29), and section 6(a) intends to give home rule units the broadest powers possible, with section 6(m) of article VII of the Illinois Constitution providing that the " '[p]owers and functions of home rule units shall be construed liberally' " (*id.* ¶ 30 (quoting Ill. Const. 1970, art. VII, § 6(m))). However, under article VII, section 6(h), the General Assembly "may provide specifically by law for the exclusive exercise by the State

of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). To limit or deny a municipality's home rule powers, the statute "must contain an express statement to that effect," and if there is no express limitation or denial of home rule authority, a municipal ordinance and a state statute may operate concurrently. *Palm*, 2013 IL 110505, ¶ 31. Indeed, section 6(i) of article VII of the Illinois Constitution provides:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not *specifically limit* the concurrent exercise or *specifically declare* the State's exercise to be exclusive." (Emphases added.) Ill. Const. 1970, art. VII, § 6(i).

¶ 49　　In *Palm*, our supreme court reiterated that, even if the State has regulated activities, home rule units may continue to regulate the same activities, unless the General Assembly restricts the concurrent exercise of home rule power by enacting "a law *specifically* stating home rule authority is limited." (Emphasis in original.) *Palm*, 2013 IL 110505, ¶ 32. The legislature also codified this principle in section 7 of the Statute on Statutes, which provides:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit *** unless there is *specific language limiting or denying the power or function* and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."[4] (Emphasis added.) 5 ILCS 70/7 (West 2018).

¶ 50　　The court in *Palm* also noted that, in the Home Rule Note Act (25 ILCS 75/5 (West 2018)), the legislature provided that any bill seeking to limit home rule power must, before a second reading, include an explanation that reliably estimates the probable impact of the bill on the powers and functions of home rule units. *Palm*, 2013 IL 110505, ¶ 33. "Accordingly, the legislature has recognized its principal role in determining whether to preempt or limit home rule power and its responsibility to *use specific language* when preempting or limiting that power." (Emphasis added.) *Id.*

¶ 51　　Collectively, the constitutional provisions and the statutes reflect an intention to minimize limitations on home rule powers, and due to the constitutional design, courts should apply "judicial interpretation of unexpressed legislative inaction" to limit home rule powers only in the "*clearest cases*," wherein local ordinances interfere with "vital" state policy. (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 34. It is the function of the legislature, not the courts, to restrict home rule authority. *Id.* In short, the Illinois Constitution, the Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 2018)), and our supreme court's case law evidence that, unless there are unequivocal, clear, and, indeed, almost "magic words" expressed in a statute reflecting an intent to limit home rule authority, *we* cannot interpret the statute in a manner to impose such restrictions. See, *e.g.*, *Palm*, 2013 IL 110505, ¶¶ 80-81 (Thomas, J., specially concurring).

¶ 52　　　　　　　　　　　　　2. Local Government and Affairs

¶ 53　　Plaintiffs argue first that the Ordinance does not pertain to local government and affairs and that, therefore, the attempted exercise of home rule power is not constitutionally

---

[4]The court in *Palm* noted that section 7 of the Statute on Statutes (5 ILCS 70/7 (West 2010)) was formally adopted as part of the court's home rule jurisprudence in *Schillerstom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001). *Palm*, 2013 IL 110505, ¶ 32.

authorized. Plaintiffs contend that the Illinois Municipal Code's regulations concerning utilities and, more specifically, the billing requirements placed upon the municipality *itself* concern a vital statewide interest in bringing municipal water utilities in line with consumer protections afforded to public water-utility customers. Plaintiffs argue that home rule units have no authority to concurrently regulate issues that are statewide in nature and that this court must "assess whether the City's motive in avoiding liability for its non-compliance with the statute, presents a more vital interest than the State's interest in establishing uniform and consistent consumer protections to all Illinois water consumers." In support of their argument (that the statute reflects an alleged vital state interest to regulate municipalities and create uniform consumer protection standards), plaintiffs point to section 11-15-2's legislative history, wherein the bill's sponsor stated:

> "[T]his is a consumer protection Bill that would really bring local water utilities in line to the requirements that we have for [public] utilities. *** [Public] utilities *** can only go back and back-bill up to 12 months for issues that might be a company-related matter. There's not that requirement on local municipal water billing and we've had instances where cities have gone back and billed 5, 6 even 10 years due to issues that were [attributable to the] municipal water provider [itself]. So, we're looking to fix that [and] protect consumers. And [the municipal water provider would] only be able to back-bill up to 12 months for issues that would come up." 100th Ill. Gen. Assem., House Proceedings, April 7, 2017, at 10-11 (statements of Representative Sosnowski).

¶ 54    Accordingly, plaintiffs contend that the City's attempt to unilaterally exempt *itself* from section 11-150-2's requirements through local ordinance reflects impermissible interference with a vital state interest and, thus, must be viewed as an invalid and unauthorized use of home rule power. We disagree.

¶ 55    In reviewing the constitutionality of asserted home rule power, we incorporate the concept of " 'vital state interest' " into a two-part (formerly three-part) test. *Palm*, 2013 IL 110505, ¶¶ 35-36. In short, " '[i]f a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, municipalities may exercise their power.' " *Id.* ¶ 36 (quoting *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 22 n.2). The supreme court has recognized that, "because the legislature can always vindicate state interests by express preemption, only *vital* state interests would allow a court to decide that an exercise of home rule power does *not* pertain to local government and affairs." (Emphases added.) *StubHub, Inc.*, 2011 IL 111127, ¶ 22. An ordinance pertains to local government and affairs where it addresses local, not state, problems, and whether a problem is a statewide one is decided by considering the nature and extent of the problem, the units of government that have the most vital interest in its solution, and the role traditionally played by local or state authorities to address it. See *Youngberg v. Village of Round Lake Beach*, 2017 IL App (2d) 160539, ¶ 6.

¶ 56    The trial court found that the City's water-billing practices were a function pertaining to its local government affairs, as it provides a public water-utility service, the Ordinance regulates billing for that service, and the Ordinance addresses unique problems the City faces. "These are local matters that lie squarely within the domain of City functions pertaining to the City's government and affairs." We agree. Plaintiffs assert that the legislature has regulated public utilities for almost a century and that the problem being addressed here is the timeliness with which a municipality issues bills for consumers' water-utility usage. Yet, state regulation of utilities generally does not, in our view, render the method of utility *billing* (which

apparently was an area traditionally exercised by municipalities until the legislature chose, in 2017, to enact section 11-150-2) of *vital* statewide concern, as opposed to a concurrent interest that still concerns local affairs. Indeed, as the trial court found, that is exactly what is at issue here; due to concerns that are exclusively local, *i.e.*, the issues with equipment and billing technology, the City crafted an ordinance to address its unique billing circumstances. An ordinance is not rendered invalid simply because it conflicts or is inconsistent with a state statute or because the State has "occupied some field of government endeavor." *Palm*, 2013 IL 110505, ¶ 42. Our supreme court has also noted that "comprehensive" or coincidental legislation is insufficient to declare the State's exercise of power to be *exclusive*. *City of Chicago v. Roman*, 184 Ill. 2d 504, 517 (1998). Here, the question concerns collecting money to fund the City's water-utility system, which it operates to the benefit of its citizens. As the City puts it, "[t]his is clearly a matter of local concern and it is the City, not the State, which has the most vital interest in the funding and operation of the City's water utility system."

¶ 57        Plaintiffs dispute that local frustrations and obstacles in complying with state law can turn a statewide problem into a local one. In other words, plaintiffs contend, unique local obstacles concerning water-meter infrastructure do not outweigh the State's interest in consumer protections; thus, the Ordinance is an invalid attempt to exercise home rule authority over an issue of statewide concern. Plaintiffs argue that the State has the more vital interest in solving the problem because water consumers are a captive audience to a monopoly when it comes to water service and citizens consuming municipal water were being treated differently from citizens receiving public-utility water. Thus, the State has a vital concern of providing uniform consumer protections to all water-utility consumers, while the City's interest in adopting the conflicting Ordinance is purely to avoid the legal implications of its noncompliance.

¶ 58        First, we disagree that the City's interest in adopting the Ordinance is *solely* to avoid the legal implications of noncompliance. While the Ordinance was adopted after this lawsuit was filed and addresses legal exposure, the other purpose of the Ordinance is to address billing customers for water usage, in light of local issues and complications. Although plaintiffs characterize the statewide interest as one of consumer protection, whether the citizens of West Chicago receive water-utility bills from their water provider more than 12 months after usage is also, arguably, a local issue, not one solely of statewide concern. Further, we disagree with plaintiffs' suggestion that the Ordinance here does not concern a legitimate home rule function under section 6(a) of article VII of the Illinois Constitution; to the contrary, it facilitates the City's ability to provide water to its citizens, which indisputably implicates local public health. Moreover, we disagree that plaintiffs' cited authority, namely *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 135 (1994), and *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 501 (1984), should alter our conclusion.

¶ 59        *Bolingbrook* concerned village ordinances that imposed fines when untreated water or sewage was discharged onto property within the Village of Bolingbrook. Although the State had enacted comprehensive public-utilities regulations, including some that addressed aspects of wastewater discharge, the court upheld the ordinances as a valid exercise of home rule authority, as they were imposed to protect public health in the village, they imposed fines regardless of who was responsible for the discharge, and the discharge of raw sewage onto property within the village did not present a statewide problem. *Bolingbrook*, 158 Ill. 2d at 138-40. Plaintiffs argue that, here, the Ordinance meets none of those standards, as the City itself is the subject of the state regulation, the Ordinance contradicts the statute with respect to

- 14 -

the City's obligations, and standardizing requirements between municipal and public water utilities is a vital statewide concern. However, the court in *Bolingbrook* focused on the fact that the ordinance at issue addressed a problem borne by the village—wastewater being dumped on property therein—so, although regulating wastewater might be of statewide concern "in the abstract," the problem itself was being borne locally, not statewide. *Id.* at 140.

> "[R]egarding the unit of government which has the most vital interest in solving the problem, we believe [the village's] interest here outweighs that of the State. While the State is concerned with the maintenance of effective utility service in the abstract, the citizens of [the village] have been subjected to raw sewage being dumped on their property. This represents a real and immediate danger to the health and welfare of plaintiff's constituents." *Id.*

Here, while the State may be concerned in the abstract with uniform consumer protections, the Ordinance is designed to address billing local consumers for water usage through services provided by the City in a manner that addresses impediments to billing that are unique to the City. It is a problem of local dimension.

¶ 60 Similarly, plaintiffs reference *Kalodimos*, where the court addressed a municipality's attempt to regulate handguns, which the defendants claimed was a matter of statewide concern. If anything, however, *Kalodimos* is primarily useful for its conclusion that there is no one formula for deciding whether an ordinance is of local or statewide concern. Specifically, the court there stated:

> "Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos*, 103 Ill. 2d at 501.

In our view, ultimately, *Kalodimos* supports the City's argument.

¶ 61 Here, the nature of the problem being addressed by the Ordinance is, at least in part, a local one, and comprehensive utility regulation or abstract state interest in consumer protection does not render the Ordinance one that impinges on a vital state interest. In short, applying the two-part test as summarized in *Palm*, does the Ordinance pertain to local affairs? Yes. Nevertheless, did the legislature expressly restrict home rule authority in this area? As we conclude below, no.

¶ 62                          3. No Express Preclusion of Home Rule Regulation

¶ 63 Having determined that the Ordinance concerns matters of local affairs, we turn now to whether the statute expressly precludes or limits home rule power. Again, section 11-150-2 of the Municipal Code provides in relevant part:

> "On or after the effective date of this amendatory Act of the 100th General Assembly, the corporate authorities of any municipality operating a waterworks or combined waterworks and sewerage system:
>
> > (1) shall bill for any utility service, including previously unbilled service: (A) within 12 months after the provision of that service to the customer if the service is supplied to a residential customer; or (B) within 24 months after the provision of that service to that customer if the service is supplied to a non-

residential customer; however, the corporate authorities of a municipality may bill for unpaid amounts that were billed to a customer or if the customer was notified that there is an unpaid amount before the effective date of this amendatory Act of the 100th General [(August 18, 2017)] for service that was supplied to the customer before January 1, 2016[.]" 65 ILCS 5/11-150-2(a)(1) (West 2018).

¶ 64 There is no language in the statute clearly reflecting an intent to limit home rule authority. Plaintiffs, nevertheless, submit that the statute expressly limits home rule authority by using the word "any" before the word "municipality" and the word "shall" after it. As such, plaintiffs argue, the word "any" means "all" and the only defining characteristic for inclusion is that the municipality operate a waterworks system. Logically, plaintiffs continue, "any" municipality must be construed to include both home rule and non-home rule municipalities. Any other interpretation, plaintiffs assert, would be absurd. We disagree.

¶ 65 The phrase "any municipality" is not sufficiently specific to express a limitation on home rule authority or concurrent authority. As other courts have noted, when the legislature wants to ensure that a term applies to a home rule unit, it *further* clarifies the term. See, *e.g.*, *Village of Schaumburg v. Doyle*, 277 Ill. App. 3d 832, 840 (1996) (discussing section 3 of the Illinois Pesticide Act, which provided that " '[t]he regulation of pesticides by *any political subdivision* of this State, *including home rule units*, is specifically prohibited' " (emphases added) (quoting 415 ILCS 60/3(4) (West 1992))). A statute restricting powers must do so with specificity, if it is to apply to a home rule unit. *Illinois Coin Machine Operators Ass'n v. County of Cook*, 2015 IL App (1st) 150547, ¶¶ 39-40 (holding that a statute's provision referencing "any political subdivision" was not sufficiently specific to include home rule units). Indeed, the phrase "municipalities" has been held insufficiently specific to include home rule municipalities and thus limits or restricts home rule authority. Specifically, in *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 42, the court found that such an argument as plaintiffs present here was " 'exactly backwards,' " as the statute must contain an express statement to limit or deny home rule powers. Again, as the City notes, it is clear that the legislature is well aware of the requirement to use specific language, as it has, in fact, inserted specific home rule limitations in other Municipal Code provisions. See, *e.g.*, 65 ILCS 5/3.1-10-17(c) (West Supp. 2019); 65 ILCS 5/8-13-20, 11-5-9, 11-13-26(b), 11-19-1(e), 11-20-6.5(c), 11-124-1(d) (West 2018).

¶ 66 We note that, although plaintiffs present one piece of legislative history concerning the enactment of section 11-150-2 (*i.e.*, the sponsor's comments about its purpose), they do not comment on whether, before a second reading, the bill that eventually became section 11-150-2 ever presented a statement estimating its probable impact on the power and functions of home rule units, as required by section 5 of the Home Rule Note Act. See 25 ILCS 75/5 (West 2016). Indeed, the City asserts that no such explanatory note is, in fact, present in the statute's legislative history. As the Home Rule Note Act requires the explanatory note and second reading when a statute seeks to deny or limit home rule authority, the absence of any such reading would suggest that home rule authority was not, ultimately, limited by section 11-150-2.

¶ 67 In addition, neither party notes that, on January 22, 2020 (*i.e.*, after the trial court's decision in this case issued), a bill was introduced to amend section 11-150-2 to expressly provide that it applies to home rule municipalities and that it limits home rule powers. 101st Ill. Gen. Assem., House Bill 4221, 2019 Sess. (introduced January 22, 2020). It appears that the most recent action on the bill occurred on June 23, 2020, when it was re-referred to the rules

- 16 -

committee. In any event, the bill proposes that the statute be amended to include the following language:

> "(c) On and after the effective date of this amendatory Act of the 101st General Assembly, a home rule municipality operating a waterworks or combined waterworks and sewerage system may not bill customers in a manner inconsistent with this Section. This Section is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise by home rule units of powers and functions exercised by the State." *Id.*

¶ 68     We will not speculate as to the reasons for the bill's introduction, and we do not rely on this proposal as a basis for our conclusion that the statute does not, in its current form, limit home rule authority. We nevertheless think it reasonable to infer that, if the statute already contained express language denying or limiting home rule authority, such proposed amendments would be unnecessary.

¶ 69                                        4. Absurd Results

¶ 70     Plaintiffs express that validating the City's claim of home rule power here could potentially result in absurd consequences, in that a municipality could pass legislation changing the rules as applied to it, thereby rendering inconsistent the rules throughout the state and from municipality to municipality. Plaintiffs refer us to the Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 2018)), explaining that, there, the legislature established regulatory provisions concerning water quality and pollution, creating water-quality standards that must be maintained by both public utilities and municipal-owned water utilities. These statutes, plaintiffs argue, do not expressly state that concurrent home rule authority is preempted or prohibited, but, they continue, it is "objectively absurd and illogical to suggest that a municipal home rule authority could override and reject the [S]tate imposed regulatory mandates concerning water quality standards and impose different standards upon itself based on its unique water-quality circumstances."

¶ 71     The Environmental Protection Act is not before us for interpretation. We would briefly note, however, that water is not fixed to one locale and, thus, standards concerning water quality necessarily implicate statewide interests. The timing of billing for water usage does not compare to regulating the water itself. In any event, to the extent that the legislature wishes to ensure that home rule municipalities cannot reject the restrictions being placed upon them, it can correct the problem by curing the legislation, which, as previously noted, it appears has been proposed here through amending legislation.

¶ 72     Plaintiffs bemoan the potential for inconsistent billing practices from one municipality to the next, such that the City's customers here might be the only people in Illinois being billed for water services provided more than 12 months in the past. However, to borrow Justice Thomas's comments from his *Palm* special concurrence, "*of course*" "[t]hat is the whole point of home rule." (Emphasis added.) *Palm*, 2013 IL 110505, ¶ 75 (Thomas, J., specially concurring). That home rule municipalities may choose to govern locally in differing manners is entirely consistent with the purpose of home rule authority. Indeed,

> "the possibility that different home rule units may adopt similar ordinances with differing [requirements] should be of no concern. The grant of home rule powers contemplates that different communities which perceive a problem differently may adopt different measures to address the problem, provided that the legislature has taken

no affirmative steps to circumscribe the measures that may be taken and that the measures taken are reasonable." (Internal quotation marks omitted.) *Roman*, 184 Ill. 2d at 514-15.

Here, the legislature did not *affirmatively* circumscribe the measures the City, a home rule municipality, can take. We are not presented with any developed argument that the Ordinance itself is unreasonable and, as the City notes, hardship occasioned by its consumers due to delayed water bills may potentially be addressed through extended payment plans authorized by other sections of the City's code. Again, if the legislature did not intend a patchwork of regulations, then the State can vindicate its interests by legislating in the "proper form." *Id.* at 519.

¶ 73  In sum, as the court in *Palm* noted, where (1) the constitutional framework relies almost exclusively on the legislature to determine whether to preempt home rule authority; (2) yet, here, the legislature has not *specifically* denied the City's use of home rule power or required that it exercise that power consistent with statutory provisions; and (3) the legislature may, if it wishes to deny or restrict the City's home rule authority, enact a statute *expressly* providing for that action in its next legislative session, we must conclude that the City's ordinance is a valid exercise of its home rule power. *Palm*, 2013 IL 110505, ¶ 44 (majority opinion). As such, plaintiffs' claims against the City, premised on the billing-period limitations in section 11-150-2, fail, and the trial court properly granted the City's section 2-615(e) motion for judgment on the pleadings.

¶ 74                              D. Retroactivity of the Ordinance

¶ 75  Plaintiffs next argue that the trial court erred when it denied their motion to limit the scope of the judgment and to strike as unconstitutional any retroactive application of the amended Ordinance. They argue that retroactive application of the Ordinance might deprive the City's residents of rights that vested from August 17, 2017 (when section 11-150-2 became effective), (so thus no vesting on and after April 15) until April 15, 2019 (when the amended Ordinance became effective). During that period, plaintiffs argue, the City issued water bills that, if they charged for water usage provided more than 12 months (for residential customers) or 24 months (for commercial consumers) earlier, were unlawful under section 11-150-2. Although the Ordinance contains a "reach-back" provision and a retroactive-impact provision, plaintiffs argue that the attempted retroactive reach unconstitutionally deprives them of abatement rights. Plaintiffs request that we remand this case and order that all bills issued by the City on and after August 18, 2017, but before April 15, 2019, for water services provided more than 12 or 24 months earlier (depending on the customer) are null and void and that all such charges not timely billed are legally abated as to the affected customers.

¶ 76  As the City points out, our standard of review for this issue is somewhat complicated by the fact that it was an issue of law, raised for the first time in a section 2-1301(e) postjudgment motion that the trial court both ordered stricken and considered substantively. However, since the court considered the issue substantively and the constitutionality of an ordinance is a question of law, we will apply *de novo* review. See, *e.g.*, *Wilson*, 2012 IL 112026, ¶ 14.

¶ 77  Here, the Ordinance provides that it applies to all billed and unbilled charges incurred for water usage "prior to and subsequent to" its effective date and that it applies to all causes of action that "have accrued, will accrue, or are currently pending" before the courts. As the trial court correctly noted, our supreme court has held that, when considering whether a change in

- 18 -

law should be applied retroactively, legislative intent, as opposed to vested rights, is the primary consideration. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 39. "If the legislature has clearly indicated the temporal reach, then such temporal reach must be given effect unless to do so would be constitutionally prohibited." *Id.* ¶ 40. Thus, "[i]f *** the legislature indicates that it wants a change of law to be applied retroactively, then a court must ask whether effectuating the legislature's intent would be constitutionally prohibited, which in turn would take into account vested rights, as such rights are constitutionally protected." (Emphasis omitted.) *Id.* ¶ 64. The supreme court has previously explained, generally, that, "[a]lthough not capable of precise definition, a vested right is a complete and unconditional demand or exemption that may be equated with a property interest." *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 291 (1996). As this court has summarized:

> "The old approach *** provided that an amended law could not be retroactively applied if the application of the change in the law would affect a vested right. Vested rights are interests that are protected from legislative interference by Illinois's due process clause (Ill. Const. 1970, art. I, § 2). [Citation.] 'While a vested right is difficult to define, it has frequently been defined to consist of something more than a mere expectation, based upon an anticipated continuance of the existing law, and it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enjoyment of the demand, or a legal exception from a demand made by another.' " *Randich v. Pirtano Construction Co.*, 346 Ill. App. 3d 414, 427 (2004) (quoting *Harraz v. Snyder*, 283 Ill. App. 3d 254, 262 (1996)).

¶ 78     The Ordinance expressly calls for retroactive application. We disagree with plaintiffs' premise that applying the Ordinance retroactively deprives them of a vested right. They assert that a change in the law that retroactively imposes a new duty is prohibited and that the Ordinance imposes upon them a new duty, namely, a financial obligation for older, "abated" charges. As to abatement, plaintiffs assert that, when section 11-150-2 was enacted on August 17, 2017, they were provided with "unconditional abatement" of water-service charges for services provided more than 12-months (residential) and 24-months (commercial) earlier and their cause of action had accrued. This is a mischaracterization of the effect of section 11-150-2.

¶ 79     First, we note that the cases upon which plaintiffs rely concerned retroactive application of statutes eliminating vested statutory *defenses*. See *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83 (2010); *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998); *Randich*, 346 Ill. App. 3d 414. Second, nothing in section 11-150-2 reflects that untimely bills "abate" the financial obligation for consumed water. Section 11-150-2 simply concerns timing for billing, while the Ordinance authorizes the City to issue the bill without time limitation. Neither provision absolves citizens from obligations to pay for consumed water or provided services. Indeed, as the City notes, the statute says nothing concerning the effect of or penalties for a municipality's violation of the billing timelines set forth within the statute, let alone does it clearly create a duty, defense, or cause of action for consumers. Generally speaking, it is presumed that a law does *not* create a private vested right and that vested rights under a statute arise when so decreed by a court of competent jurisdiction. See, *e.g.*, *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 104 (1990) (the presumption is that a law is not intended to create private vested rights but, rather, that it declares a policy to be pursued until the

legislature says otherwise); *Commonwealth Edison Co. v. Will County Collector*, 305 Ill. App. 3d 819, 825 (1999) ("[w]hile there is generally no vested right in a public law, rights that arise under a statute vest when they are decreed by a court of competent jurisdiction"). Our supreme court has noted that, when assessing whether an amended law should be applied to a particular case, it bears considering whether "settled expectations honestly arrived at with respect to substantial interests ought not to be defeated." (Internal quotation marks omitted.) *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 48 (2001).

¶ 80    Here, there is no right to complimentary water usage under the Municipal Code, and no court has decreed that section 11-150-2 gives consumers a *right* to timely water billing. We do not agree that plaintiffs could have held a settled expectation respecting any substantial interest, certainly not one akin to a property interest, such that retroactively applying the Ordinance to their case is improper.

¶ 81                    E. Section 2-619 Motion to Dismiss

¶ 82    Plaintiffs' final argument concerns the trial court's section 2-619 dismissal of the amended complaint's claims against Water Resources on the basis that plaintiffs were not third-party beneficiaries to the contract between defendants and, thus, had no standing to pursue those claims. The court found that the purpose of the contract was to provide working water meters for the City and its citizens and that, although the citizens would benefit from the meters, the nexus was insufficient to give plaintiffs a cause of action against Water Resources. Plaintiffs argue that the court's determination was incorrect because the agreement (a public contract) between defendants confers a direct benefit upon plaintiffs and similarly situated consumers, such as by requiring Water Resources to schedule equipment installation for consumers, install equipment at their homes, promote "buy in" from City residents, honor warranty repairs and maintenance, provide long-term customer support, and populate their information into electronic systems. Plaintiffs also note that, when the City's attorney wrote to Water Resources in June 2016, the correspondence noted that the City had wished to select a company that could provide a project that allowed customers to look online at their data consumption and that, because of technical problems, customers will not be able to access archived data, "thereby eliminating most of the benefit of this feature which is highly touted and desired by the City." Collectively, plaintiffs argue, "there is no legitimate question that [they] are, as a matter of law, intended third-party beneficiaries to the contract between the City and [Water Resources]."

¶ 83    Water Resources responds that plaintiffs fail to point to express language that overcomes the strong presumption that the contract, even if it incidentally benefits others, confers direct benefits only on the two contracting parties. It argues that the trial court correctly granted the motion to dismiss, as the contract evinces that its purpose was to implement for the City an "Advanced Metering Infrastructure Fixed Network Program" and that any benefit to plaintiffs from the contract was incidental, not direct. It contends that the public contract enumerated many tasks and obligations to be completed by Water Resources and that, while those tasks involved citizens' homes, equipment, and water-usage technology, plaintiffs are only incidental beneficiaries of the public improvements being provided to the City. In addition, Water Resources notes that plaintiffs do not even allege that the identified provisions purportedly benefitting them were breached or that they form the basis of their causes of action;

rather, plaintiffs seek redress for violations of *billing* practices. We agree and reject plaintiffs' arguments.

¶ 84    In short:

> " 'The rule is settled in this state that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him [or her] or is but an incidental benefit to him [or her] arising from the contract. If direct[,] he [or she] may sue on the contract; if incidental he [or she] has no right of recovery thereon. ***'
>
> ***
>
> ***[T]he intention of the parties, as evidenced by the contract, determines whether or not a third-party beneficiary may sue. It is not enough that the beneficiary is an incidental beneficiary: only a direct beneficiary has a right against [the contracting parties]." *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill. 2d 381, 384-85 (1980) (quoting *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (1931)).

¶ 85    Indeed, even if the contracting parties know, expect, or intend that others will benefit from their agreement, that alone is insufficient to overcome the strong presumption that the contract was intended only for the contracting parties' direct benefit. See *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1057 (2010). The intention to make a third party a direct beneficiary to a contract must be demonstrated through an express provision in the contract identifying that party by name or description and must almost be an express declaration. *Id.*; *F.H. Paschen/S.N. Nielson, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 96 (2007). Critically, "most contracts entered into by a governmental unit are made for the benefit of the public at large." *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 635 (1995) (" '[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested' " (quoting Restatement (Second) of Contracts § 313, Explanatory Notes, cmt. a, at 472 (1981))).

¶ 86    The contract here benefits plaintiffs only incidentally, and references within the contract to Water Resources' responsibilities as they pertained to citizens do not confer a direct benefit upon the citizens but, rather, are referenced only to specify its obligations under the contract. For example, although not a case involving a governmental contract, *Alaniz v. Schal Associates*, 175 Ill. App. 3d 310, 312-13 (1988), illustrates the point. There, the plaintiff, a sub-subcontractor's employee, suffered a work-related injury. He alleged that he was an intended third-party beneficiary of a contract entered into between the subcontractor and the general contractor, relying on a provision stating that " '[t]he subcontractor *** has the responsibility for maintaining the safety and loss prevention programs covering all work performed by it, and its subcontractors.' " *Id.* at 311-12. The plaintiff argued that the provision allowed him to maintain an action against the subcontractor for personal injuries caused by unsafe work conditions and equipment, but the court disagreed, concluding that general language about safety reflected only an intent by the contracting parties to benefit themselves by setting forth their respective responsibilities, not to confer a direct benefit to the plaintiff. *Id.* at 312-13; see also *Consolidated Biscuit Co. v. Illinois Iowa Power Co.*, 303 Ill. App. 80, 84-85 (1939) (property owner could not hold liable a waterworks company, under a contract between that company and the city, where the company failed to furnish adequate water supply for fire protection, because the contract was meant to provide protection for citizens generally, not for

any particular property or person). Here, references to customers or citizens and Water Resources' tasks to install equipment, help encourage "buy in" to the new system, maintain the equipment, or handle complaints are insufficient to reflect anything more than its own obligations under the contract that will, *incidentally*, benefit the public at large.

¶ 87 The cases upon which plaintiffs rely are readily distinguishable. In *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163 (1983), a homeowners' association sued a developer for its breach of an implied warranty of fitness in common land (including townhouses and the storm sewer system) in which the association held easements. The association, which also held title to the common land, had standing as a third-party beneficiary to sue the developer under a subdivision-improvement agreement because the developer had the duty to maintain the system until the city accepted it. *Id.* at 173-74. Thus, there was no large class of citizens involved, and there was a much more direct benefit than here to the plaintiffs. Similarly, in *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 179 (1982), a city agreed to forgo legal action for building-code violations if the contractor promised to make specific repairs to a plaintiff's house. The contract enumerated the repairs that the contractor had to perform, and the homeowner-plaintiff was, therefore, clearly a direct and intended beneficiary of that contract. *Id.* Plaintiffs argue that, like in those cases, here, they were "expressly referenced in the contract in that [Water Resources] was required to enter their properties and install water meter improvements and had continuing obligations owing to those property owners thereafter." This misses the mark for the reasons discussed, as the contract does not clearly intend to directly benefit plaintiffs.

¶ 88 In sum, the court properly granted Water Resources' section 2-619 motion to dismiss.

¶ 89                                III. CONCLUSION
¶ 90 For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 91 Affirmed.