FTI INTERNATIONAL, INC., Plaintiff-Appellant, v. CINCINNATI INSURANCE COMPANY, Defendant-Appellee.

Second District No. 2—02—0697

Opinion filed May 27, 2003.

Thomas E. Greenwald and Debra A. Delia, both of Oliver, Close, Worden, Winkler & Greenwald, of Rockford, for appellant.

Richard D. Heytow, of Crystal, Heytow & Warnick, P.C., of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:
Plaintiff, FTI International, Inc., appeals an order of the circuit

court of Winnebago County granting the motion of defendant, Cincinnati Insurance Company, to stay the proceeding below pending the outcome of an appraisal. The sole issue raised in this appeal is whether the trial court's grant of the motion was consistent with the provisions of the insurance contract. For the reasons that follow, we reverse and remand.

The dispute arises out of the destruction by intruders of three pieces of equipment on plaintiff's premises. Plaintiff manufactures this equipment for sale. Plaintiff claims that it is entitled to an amount in excess of $500,000 by virtue of its policy with defendant. Defendant has paid less than $100,000 on the claim, relying on a portion of the policy that it asserts limits its liability to the amount necessary to repair or replace the equipment. Plaintiff, on the other hand, relies on a portion of the policy by which it claims it is entitled to the sales prices of the three items.

Defendant demanded that the case be submitted to appraisers and moved to stay the proceedings. The policy contains the following provision:

> "If we and you disagree on the value of the property or the amount of 'loss', either may make written demand for an appraisal of the 'loss'. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of 'loss'. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any of the two will be binding."

Defendant contends that the proceeding below was properly stayed based on the terms of the policy.

■ An order to compel arbitration is injunctive in nature. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Such an order is subject to interlocutory appeal. *Salsitz*, 198 Ill. 2d at 11. The sole question for a court of review is whether there was a sufficient showing before the trial court to sustain its order. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 667 (1983). However, the construction of a contract presents a question of law and is thus subject to *de novo* review. *Fitzwilliam v. 1220 Iroquois Venture*, 233 Ill. App. 3d 221, 237 (1992).

■ The present case requires that we construe the portion of the insurance contract providing for appraisal. The main goal in the construction of a contract is to ascertain and give effect to the intent of the parties. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34 (1993). If a contract is clear and unambiguous,

the intent of the parties must be determined solely from its plain language. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000). Additionally, Illinois public policy favors the resolution of disputes through informal procedures like arbitration. *Reed v. Doctor's Associates, Inc.*, 331 Ill. App. 3d 618, 621 (2002).

The interpretation of the following sentence is key to resolving this appeal: "If we and you disagree on the value of the property or the amount of 'loss', either may make written demand for an appraisal of the 'loss'." For a stay to be appropriate, the dispute must be of a sort that the parties intended would fall within the scope of the appraisal process. *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214, 219 (2001). Thus, the question before us concerns what the parties meant by "appraisal."

We conclude that the plain meaning of "appraisal" does not encompass the type of dispute in which the parties are presently engaged. Black's Law Dictionary defines "appraisal" as "1. The determination of what constitutes a fair price; valuation; estimation of worth. 2. The report of such a determination." Black's Law Dictionary 97 (7th ed. 1999). Webster's Third New International Dictionary provides the following definitions: "1: an act of estimating or evaluating (as quality, status, or character) esp. by one fitted to judge *** 2: a valuation of property by the estimate of an authorized person." Webster's Third New International Dictionary 105 (2002). Thus, the definitions of "appraisal" in two common sources suggest that an appraisal is primarily concerned with ascertaining the value of something. There is no indication in either definition that resolving questions of law is something that takes place during an appraisal.

■ Furthermore, a leading treatise explains the difference between arbitration and appraisal this way:

"It is important to note at the outset that, as addressed below in detail, appraisal and arbitration are two distinct procedures. Appraisal calls for the mere determination of a particular fact or set of facts. In the insurance context, appraisal is most often used to determine the amount of the loss sustained under a property insurance policy. Arbitration is a more far-reaching proceeding, by which the parties agree to have a neutral person or persons resolve a disputed matter." 15 Couch on Insurance 3d § 209:4 (1999).

The treatise goes on to explain:

"Although the terms appraisal and arbitration are sometimes used interchangeably, appraisal is distinguished by its more limited role. In an appraisal, the parties refer some ministerial duty or some matter involving only the ascertainment of facts to selected persons for disposition. An appraisal requires neither a hearing nor

the exercise of judicial discretion." 15 Couch on Insurance 3d § 209:8 (1999).

Regarding the nature of an appraisal, the treatise states the following: "Appraisal is informal, as opposed to quasi-judicial, in nature. More specifically, appraisers are generally expected to act on their own skill and knowledge. They may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached. Further, appraisers are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by *ex parte* investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue." 15 Couch on Insurance 3d § 209:9 (1999).

Thus, we find further support for the notion that an appraisal is a relatively limited process. Committing questions of contract interpretation to an appraiser, whose primary function is to ascertain the value of property or the amount of a loss, is simply not consistent with the nature of an appraisal. See also 4 Am. Jur. 2d *Alternative Dispute Resolution* § 12 (1995).

■ In the instant case, the parties agreed to resolve disputes concerning value or amount of loss through an appraisal process. Notably, they did not use the broader term "arbitration." We must conclude that they intended something when they selected the narrower term "appraisal," and the logical conclusion is that they intended that only certain limited questions would be resolved through their chosen alternative dispute resolution procedure. In other words, the plain language of the contract precludes the alternative process for resolving matters of law, such as questions of contract interpretation.

The error of the trial court was that it treated the issue solely as one of valuation. It found that "[v]aluation questions are to be settled under the 'appraisal' section of the contract." By staying the proceedings, the trial court placed with the appraisers not only the responsibility of ascertaining the value of the property but also the responsibility of determining which value was to be applied under the terms of the contract. The former determination falls within the scope of an appraisal. The latter question is one of law for the court to determine.

We recognize that the resolution of disputes through informal procedures, as opposed to litigation, comports with the public policy of this state. *Reed*, 331 Ill. App. 3d at 621. However, public policy also demands that competent parties be free to contract with each other (*J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 284 (2001)), and, of course, the primary goal in construing a contract is to ascertain and give effect to the intent of the parties (*Omnitrus*

*Merging Corp.*, 256 Ill. App. 3d at 34). In this case, the parties agreed to a limited procedure for resolving certain disputes. We cannot force them to engage in a plenary procedure, contrary to their agreement, even though such procedures are favored.

Defendant relies on *Bailey v. Timpone*, 75 Ill. 2d 539 (1979), and *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724 (1990), in arguing for a contrary result. We find both cases distinguishable. In *Bailey*, our supreme court considered whether a trial court properly deferred to the arbitrators' construction of the term "gross income." *Bailey*, 75 Ill. 2d at 544-46. The term appeared in a lease between the parties that fixed rent as a percentage of gross income. The supreme court observed, "When a question arose concerning the meaning of the term 'Gross Income' *as used by the arbitrators*, they, rather than the courts, were entitled to clarify the term in order to complete the function which the parties had assigned to them: to finally and conclusively establish the rent." (Emphasis added.) *Bailey*, 75 Ill. 2d at 545. Thus, in *Bailey*, the arbitrators were merely clarifying how they used the term in the context of their appraisals. In the present case, the question is which section of the policy applies. This question is beyond the scope of an appraisal.

*Beard* does state, in *dicta*, that "it appears that the proper measure of damages is a question to be answered, at least initially, by the appraisers and umpire." *Beard*, 203 Ill. App. 3d at 730-31. The plaintiff argued that the real dispute between the parties involved the proper measure of damages. *Beard*, 203 Ill. App. 3d at 730. However, it is unclear whether the plaintiff based this argument on an interpretation of the policy or simply on the method of appraisal selected by the appraisers. See *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 736 (2002) (delineating three methods sometimes used by appraisers in determining the value of property). The latter would seem a proper question for an appraiser to resolve; the former clearly is not. As *Beard* is unclear on this point, it provides little insight into the issue before us.

We find *Lundy*, 322 Ill. App. 3d 214, to be of sounder guidance. In *Lundy*, it was held that issues regarding whether the defendant, an insurance company, misrepresented the quality of repair parts it would pay for under its automobile insurance policies fell outside the scope of an appraisal process. *Lundy*, 322 Ill. App. 3d at 219. The *Lundy* court came to this conclusion because resolution of the question required the construction of a portion of the policy that provided that the insurer would pay for parts of a "like kind and quality." *Lundy*, 322 Ill. App. 3d at 219. Similarly, in the present case, the dispute turns on the construction of the policy. The resolution of this issue

will likely require the application of principles of contractual interpretation. These tasks are not the sorts of things that take place during an appraisal.

In light of the foregoing, we reverse the order of the circuit court of Winnebago County staying the proceedings below pursuant to the appraisal clause to resolve an issue of contractual construction. We remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McLAREN and O'MALLEY, JJ., concur.