NOTICE

Decision filed 08/24/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230249-U

NO. 5-23-0249

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Coles County. |
| | ) | |
| v. | ) | No. 22-MR-27 |
| | ) | |
| TIM MORROW and JODIE MORROW, | ) | Honorable |
| | ) | Brien J. O'Brien, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err when it compelled the insurer to participate in the appraisal process as outlined in the applicable insurance policy where the issue to be determined was amount of loss and the appraisal clause specifically listed amount of loss as proper issue to be determined under that process.

¶ 2   The plaintiff, Shelter Mutual Insurance Company (Shelter), appeals the circuit court of Coles County's March 28, 2023, oral pronouncement denying its motion for judgment on the pleadings and ordering the parties to proceed forward with the appraisal process as outlined in the at-issue insurance policy, and the circuit court's written March 30, 2023, order memorializing the same. For the following reasons, we affirm.

1

¶ 3                                I. BACKGROUND

¶ 4    Shelter issued a homeowners insurance policy, numbered 12-71-3087218-1, to the Morrows (the Policy). The Policy was in effect from April 7, 2021, to April 7, 2022. At all relevant times, the Policy's relevant provisions provided as follows:

"**SECTION I - PROPERTY PROTECTION**

**COVERAGE A – DWELLING**

INSURING AGREEMENTS

1. **We** cover **accidental direct physical loss** to the following property, except for those perils and losses excluded under the heading 'Exclusions Applicable To Coverages A & B'.

(a) **Your dwelling**, including building structures attached to it, at the **residence premises**, but only if that **dwelling** is used principally as a private **residence**. If a building structure is connected to the **dwelling** by only a utility line or fence, it will not be considered attached to the **dwelling** for purposes of this coverage.

* * *

**COVERAGE B - OTHER STRUCTURES**

INSURING AGREEMENTS

1. **We** cover **accidental direct physical loss** to other structures that are permanently attached to the **residence premises** but not attached to **your dwelling**, except for those perils and losses excluded under the heading 'Exclusions Applicable To Coverages A & B'. ***

* * *

5. **We** cover **accidental direct physical loss** to fences on the **residence premises** under this coverage only, whether they are attached to **your dwelling** or not. This

2

coverage does not extend to a fence used to any extent for **business** irrespective of the fact that it may also be used for non-**business** purposes.

\*\*\*

EXCLUSIONS APPLICABLE TO COVERAGES A & B

**We** do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below. That loss or damage is excluded from coverage regardless of:

(a) The proximate cause of that event or condition;

(b) The fact that other events or conditions, which are not excluded, caused the loss or damage;

(c) The fact that other events or conditions, which are not excluded, contributed to the loss or damage;

(d) The sequence of the events or conditions that caused the loss or damage;

(e) Whether the events and conditions that caused the loss or damage occurred suddenly or gradually;

(f) Whether the loss or damage is isolated or widespread; or

(g) Whether the loss or damage arises from natural forces, external forces, or a combination of such forces.

\* \* \*

7. The Policy contains the following relevant definitions:

1. **Accident** means an action or occurrence, or a series of actions or occurrences, that:

(a) Started abruptly;

(b) During the policy period; and

3

(c) Directly resulted in **bodily injury** or **property damage**.

\*\*\*

2. **Accidental direct physical loss** means loss of possession of, or actual physical damage to, a part of the covered property which is caused by an **accident**. It does not include:

(a) Consequential economic damage resulting from such physical damage to that part or to the covered property as a whole;

(b) Consequential economic damage resulting from the inability to restore full monetary value to that part or to the covered property as a whole because of the fact that it has sustained physical damage;

(c) Consequential economic damage resulting from the loss of use of that part or the covered property as a whole;

(d) Consequential economic damage resulting from the inability to match the parts which are **repaired** or **replaced** with undamaged adjacent parts; or

(e) Any diminution of the pre-loss value of the covered property after the **repair** or **replacement** of its parts.

8. The Policy also provides as follows:

SPECIAL PROVISIONS AND CONDITIONS RELATING TO SECTION I

\* \* \*

10. Appraisal

If **you** and **we** fail to agree on the **market value**, **total restoration cost**, **actual cash value**, or amount of loss, as may be required in the applicable policy provision, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the

demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the **market value**, **total restoration cost**, **actual cash value**, or loss to each item as may be required in the applicable policy provision. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the **market value**, **total restoration cost**, **actual cash value**, or amount of loss as may be required in the applicable policy provision. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the **market value**, **total restoration cost**, **actual cash value**, or amount of loss. Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal unless the amount **you** demanded prior to the appraisal process is awarded by the appraisers pursuant to this provision. In that event, the appraisers and umpire will be fully paid by **us**."

¶ 5    On December 10, 2021, a hail and windstorm occurred affecting the Morrows' property. The Morrows submitted a claim to Shelter for damage allegedly sustained because of the storm. Shelter inspected the claimed property damage and determined that the damage added up to less than the Morrows' deductible of $1000. In response, the Morrows obtained their own report and estimate from a public adjuster, the Accuval Group LLC, dated December 21, 2021. That report indicated that a complete tear-off and replacement of the residence roof and garage roof, as well as removal and replacement of the fencing would be necessary at a total cost of $38,198.15, less the $1000 deductible.

¶ 6     Following this report, Shelter obtained a second assessment, this time from Donan Engineering, dated February 2, 2022. That report concluded that some of the damage claimed was attributed to the storm, but other damage claimed was not. That report found that much of the damage was attributable to installation errors, inadvertent man-made damage, and sealant strip failure. On February 8, 2022, Shelter sent a letter informing the Morrows that it continued to view the loss as not exceeding their deductible. On May 5, 2022, the Morrows submitted a written demand for appraisal pursuant to the appraisal provision in the policy.

¶ 7     On June 21, 2022, Shelter filed a declaratory judgment action seeking to deny insurance coverage to the Morrows for the alleged damages resulting from the December 10, 2021, storm. On August 17, 2022, the Morrows answered the complaint and filed counterclaims asserting breach of contract and bad faith, specifically alleging bad faith for Shelter's refusal to submit to the appraisal process as outlined in the Policy and as previously invoked by the Morrows on May 5, 2022. On January 13, 2023, Shelter filed a motion for judgment on the pleadings in which it argued that (1) the appraisal clause of the policy had not been triggered, and (2) the Morrows had failed to meet their burden of establishing that the alleged physical damage to their home was a covered loss under the Policy. On February 28, 2023, the Morrows filed their response arguing that (1) they had demonstrated that Shelter breached the Policy and acted in bad faith, and (2) the parties' dispute was fundamentally regarding the amount of covered windstorm loss which triggered the appraisal provision.

¶ 8     Following briefing on the matter, on March 28, 2023, the parties appeared before the circuit court for a hearing on the motion. At the close of the hearing, the circuit court orally denied Shelter's motion for judgment on the pleadings, finding that the dispute between the parties was over the extent of the claimed damage, and granting an oral motion to compel appraisal because the dispute between the parties was over the amount of loss. The circuit court then entered a written

6

order on March 30, 2023, again denying the motion for judgment on the pleadings and ordering the parties to proceed with the appraisal process as previously invoked by the Morrows and as outlined in the Policy.

¶ 9 On April 4, 2023, the Morrows' counsel emailed Shelter's counsel reinvoking the appraisal process for the second time. On April 13, 2023, Shelter filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which seeks review of the circuit court's order to proceed with appraisal, and which also seeks review of the circuit court's denial of Shelter's motion for judgment on the pleadings. This timely appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11 Before we begin our analysis as to the propriety of the circuit court's denial of Shelter's motion for judgment on the pleadings, we must first address the Morrows' motion to dismiss this appeal for lack of jurisdiction.

¶ 12 Illinois Supreme Court Rule 307(a)(1) provides for an appeal as a matter of right of an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). The Morrows' motion asserts that Rule 307(a)(1) only applies to interlocutory injunctions (*i.e.*, temporary restraining orders and preliminary injunctions), and does not apply to noninjunctive relief or to orders which alter the status quo in a permanent way. See *Santella v. Kolton*, 393 Ill. App. 3d 889, 901-05 (2009). The Morrows argue that Shelter is seeking review of a noninjunctive order (a denial of motion for judgment on the pleadings) and review of a noninterlocutory order (ordering the parties into appraisal). Thus, the Morrows contend we lack jurisdiction to hear this appeal. However, the Morrows' interpretation of Rule 307(a)(1) is mistaken.

¶ 13 This court recently held in *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶ 21, that an order compelling arbitration is injunctive and interlocutory in nature and

7

therefore appealable under Rule 307(a)(1). Additionally, we have held that an appraisal clause is analogous to an arbitration clause. *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 727 (1990) ("Defendant next argues that the appraisal clause in the insurance policy is analogous to an arbitration clause \*\*\*. We agree."). We also held in *Hartz* that under a Rule 307(a)(1) jurisdiction analysis, the title of a motion is not binding, or necessarily instructive on the issue, if the resulting order has injunctive effect. *Hartz*, 2021 IL App (5th) 190327, ¶ 27. In *Hartz*, we held that an order denying a motion to dismiss was tantamount to an order denying arbitration and stated as our reasoning the following:

> "The substance of the action at the trial court revolved around the validity and applicability of the arbitration clause. In ruling on Brehm's motion to dismiss, the trial court considered the arbitration clause and determined that it was substantively unconscionable and unenforceable. The trial court's order effectively restrained Brehm's exercise of the contractual right to compel arbitration, and thus we treat Brehm's motion to dismiss as a motion to compel arbitration, even though that was not the motion's title. Accordingly, based upon the content of the pleadings coupled with the findings of the trial court, we conclude that the order was injunctive in nature and, therefore, appealable under Rule 307(a)(1)." *Id.*

¶ 14    Therefore, we find that Shelter's appeal, here, pursuant to Rule 307(a)(1) is proper because the first part of the circuit court's order compelling appraisal is analogous to an order compelling arbitration, and the second part of the order denying Shelter's motion for judgment on the pleadings has the effect of compelling Shelter's participation in the appraisal process and restrains Shelter from exercising its contractual rights outside of the appraisal provision. Having determined that we have jurisdiction to hear Shelter's appeal, we now turn to our analysis of the issues raised.

¶ 15    The standard of review for a decision on a motion for judgment on the pleadings is *de novo*. *McCall v. Devine*, 334 Ill. App. 3d 192, 198 (2002). The standard of review for a decision on a motion to compel arbitration is whether there was sufficient showing to sustain the circuit court's order. *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). If a circuit court renders its decision without an evidentiary hearing and without findings of factual issues, *de novo* review is proper. *Id.* A motion for judgment on the pleadings concedes the truth of the well-pled facts of the nonmovant and requires the court to construe all pleadings in a light most favorable to the nonmovant, as well. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005).

¶ 16    While Shelter's notice of appeal indicates its intent to challenge the circuit court's denial of its motion for judgment on the pleadings, it makes no argument as to that point, instead only arguing as to why the appraisal clause has not been properly invoked under the facts of this case and why the circuit court erred in compelling Shelter to participate in the appraisal process as set forth in the Policy. Because Shelter fails to articulate a clear position as to how the circuit court erred in denying its motion for judgment on the pleadings, we find it has forfeited any such argument regarding that aspect of the circuit court's decision. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited).

¶ 17    Finding that issue forfeited, we now turn to the issue of the circuit court compelling Shelter to participate in the appraisal process pursuant to the Policy. Following a hearing on the motion for judgment on the pleadings, the circuit court determined that this "is not a dispute over scope of coverage. *** [T]he dispute is over the extent of the claimed damage." The court went on to state:

9

"Again the dispute is not over the scope of coverage but rather it is a dispute over the extent of the loss, so I believe the appraisal clause has appropriately been triggered by the demand from the insureds, so for those reasons I'm going to deny the Motion for Judgment on the Pleadings in its entirety ***."

¶ 18    Shelter contends that a party's "right or obligation to engage in the appraisal process is limited to what they agreed to in the policy, and to the nature of the appraisal process itself." It then argues that an appraisal process is limited to "determining the price of covered damage," but is not the proper venue for "resolving a dispute about whether covered damage occurred," or "the extent of that covered damage." Thus, Shelter takes the position that appraisers come into the insurance claims process "only after the court determines there is a covered loss, and how much of the property sustained a covered loss." Taken to its logical conclusion, Shelter's position requires the circuit court to determine whether a covered loss occurred, the extent of that loss, and then only if the parties disagree as to the cost of correcting or compensating for that damage would the appraisal process begin. Under the facts presented in this matter, we disagree.

¶ 19    The appraisal clause at issue in the Policy reads as follows: "If [the Morrows] and [Shelter] fail to agree on **the market value, total restoration cost, actual cash value**, or amount of loss, as may be required in the applicable policy provision, either party may make written demand for an appraisal." (Emphasis in original.) Here, the Morrows' retained adjuster, Brandon Hahn of Accuval Group LLC, assessed the storm-caused damage in the amount of $38,198.15. Shelter's revised assessment found covered damage occurred to the Morrows' property, but only assessed it at an amount of $851.97. Shelter's assessment acknowledged that a tornado touched down approximately 1.8 miles northwest of the Morrows' property on the date of the storm. The report acknowledged that the "presence of missing shingles from neighboring properties, broken tree limbs, and the leaning fence indicates that higher wind speeds affected [the Morrows'] property."

10

Thus, based upon these facts alone, it is evident that the question at issue is not whether a covered loss occurred because a covered loss was found by Shelter's own adjuster in its report. Instead, the true dispute of the parties is the amount of that covered loss.

¶ 20 Looking to the language of the appraisal clause, it clearly states, "If [the Morrows] and [Shelter] fail to agree on the market value, total restoration cost, actual case value, *or amount of loss*, \*\*\* either party may make written demand for appraisal." (Emphasis added; previous emphasis omitted.) "Amount of loss" is not a term of art specifically defined in the Policy. Thus, the issue presently before us (the amount of loss) clearly falls under the appraisal clause. To read the language of the appraisal clause in any other manner would be to completely change the plain meaning of the language used. "Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary, and popular sense.' " *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006) (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991)).

¶ 21 In its brief, Shelter "acknowledges that the federal district courts have taken a different view of the role and scope of insurance appraisals" from the limited role Shelter is articulating here on appeal. Referenced by both parties is the matter of *Runaway Bay Condominium Ass'n v. Philadelphia Indemnity Insurance Cos.*, 262 F. Supp. 3d 599, 601 (N.D. Ill. 2017), which held that under Illinois law, questions concerning cause of damage to an insured's property were appropriate for appraisal pursuant to condominium association's insurance policy allowing either party to seek appraisal of "loss" if they could not agree on property's value or amount of loss, despite insurer's argument that the matter involved legal issues that could be resolved only by court. Shelter attempts to overcome this case law by arguing that the language in the Policy distinguishes the case somehow based on the requirement of "accidental direct physical loss." However, the parties' dispute in this matter is simply over the amount of "accidental direct physical loss" from the

11

December 10, 2021, storm that hit the Morrows' home, not what constitutes an "accidental direct physical loss."

¶ 22    Shelter also attempts to overcome *Runaway Bay* and the other cited case law by relying upon *FTI International, Inc. v. Cincinnati Insurance Co.*, 339 Ill. App. 3d 258, 260-61 (2003). However, *FTI* dealt with a different issue than the one presented here. *FTI* held that appraisal is not an appropriate forum for disputes centered around questions of policy interpretation. Here, the issue is determination of the "amount of loss," which is expressly stated within the appraisal clause as an appropriate issue for determination under that process. There is no coverage interpretation issue for the circuit court to decide; therefore, *FTI* is not controlling.

¶ 23                              III. CONCLUSION

¶ 24    For the foregoing reasons, we deny the Morrows' motion to dismiss for want of jurisdiction, and we affirm the circuit court of Coles County's March 28, 2023, oral pronouncement denying its motion for judgment on the pleadings and ordering the parties to proceed forward with the appraisal process as outlined in the Policy, and its written March 30, 2023, order memorializing the same.


¶ 25    Motion denied; judgment affirmed.