2025 IL App (2d) 240723
No. 2-24-0723
Opinion filed May 12, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| XIANG ZHAO, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-MR-104 |
| | ) | |
| STATE FARM FIRE & CASUALTY, | ) | |
| COMPANY, | ) | Honorable |
| | ) | Jorge L. Ortiz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, State Farm Fire & Casualty Co. (State Farm), appeals the decision of the trial court granting plaintiff's motion for judgment on the pleadings and ordering the parties to participate in contractually based appraisal. At issue here is (1) whether the trial court erred in granting the motion for judgment on the pleadings and (2) whether State Farm's late notice defense precludes the parties from the appraisal process. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     Plaintiff, Xiang Zhao, owns the single-family residence at 993 Creek Bend Drive in Vernon Hills. State Farm issued to plaintiff a homeowners insurance policy on the property. Policy 13-

GD-V496-0 was effective during the relevant period and included coverage for accidental direct physical loss to the dwelling caused by hail.

¶ 4     A hailstorm occurred in the area on April 20, 2023. Plaintiff submitted a claim on August 3, 2023, asserting that her home had been damaged by the storm. Defendant investigated and assigned plaintiff claim number 1353W646D.

¶ 5     On September 12, 2023, defendant sent an estimate for items covered in the claim and issued to plaintiff an actual value payment of $12,677.94. The estimate included replacement of gutters, downspouts, and aluminum wraps on certain window frames and trim.

¶ 6     Plaintiff disagreed with the assessment and received a second estimate from Encompass Builders on September 26, 2023. Encompass Builders determined that the hail damage was extensive enough to require the replacement of all of the windows in the dwelling, at an estimated cost of $133,817.82. The second estimate also claimed that the scope of the work was extensive enough to require a general contractor and to trigger the inclusion of both overhead and profit in the estimate.

¶ 7     In a letter to defendant dated December 22, 2023, plaintiff invoked her right to the appraisal process pursuant to the insurance contract. Plaintiff identified the dispute as "the scope of the damages and the damage repairs" needed to restore the windows of the dwelling. She listed her appraiser and asked defendant to have its appraiser contact him within 20 days to select an umpire and schedule the appraisal.

¶ 8     Defendant replied to the appraisal demand in a letter dated January 2, 2024. Citing the contract, defendant wrote that it had "completed the inspection of the property and we have provided our recent estimate which confirms the covered items for this claim." Defendant refused

plaintiff's demand for an appraisal under the terms of the policy, stating that it viewed the differences in estimates to be based on a dispute over policy coverage, not the amount of loss.

¶ 9     The appraisal provision of the insurance policy states, in relevant parts:

"If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with SECTION I – CONDITIONS, Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value,* replacement cost, and if applicable, the market value of each item in dispute. The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us.*

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their

differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2) the party requesting the selection described in item c (1) must provide the other part:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b. signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us.* In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

\* \* \*

g. You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of

each item in dispute. The appraisers and the umpire have no authority to decide:

(1) any other questions of fact;

(2) questions of law;

(3) questions of coverage;

(4) other contractual issues; or

(5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgement in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss." (Emphasis in original).

¶ 10 Defendant posited that the appraisal provision was "to resolve differences in the price of repairs that State Farm determined were covered" and that plaintiff's estimate equated to a dispute in coverage under the policy. Defendant declined to participate in the appraisal process because it "cannot be used to resolve disputes regarding coverage provided by the contract." The letter closed by citing language in the policy regarding bringing a lawsuit against defendant and referring plaintiff to the Illinois Department of Insurance.

¶ 11 Plaintiff filed a two-count complaint against defendant on March 22, 2024. In count I of the complaint, plaintiff sought a declaratory judgment that would compel the parties to proceed with appraisal under the terms of the policy. In count II, plaintiff sought monetary damages for the alleged breach of the policy by defendant.

¶ 12    Defendant filed an answer and affirmative defense on May 30, 2024. In the single affirmative defense, defendant asserted that the alleged loss was not caused by wind and hail damage. Instead, defendant claimed that any damage to the windows was caused by conditions not covered by the policy, such as natural wear and tear, improper installation, and age-related mechanical breakdown. As such, argued defendant, there was no accidental direct physical loss to the windows that would warrant full replacement under the terms of the policy. Plaintiff filed her reply to the affirmative defense on June 4, 2024.

¶ 13    On August 14, 2024, plaintiff filed a section 2-615(e) motion for judgment on the pleadings. 735 ILCS 5/2-615(e) (West 2022). She amended the motion on August 16, 2024, and defendant filed a response to the amended motion on September 17, 2024. Plaintiff argued that she properly initiated the appraisal process and that defendant improperly "confuses the issue of coverage with a different issue of causation." In its September 17, 2024, response, defendant argued that there were several disputes between the parties, including whether plaintiff complied with the notice requirements of the policy. Defendant also asserted that "appraisal is not appropriate when the scope of the loss is in dispute." In her October 1, 2024, reply, plaintiff countered that the scope of loss from accidental damage is exactly the type of issue that should be resolved by appraisal and that defendant waived the issue of late notice.

¶ 14    The trial court entered an 11-page, written order granting judgment on the pleadings in plaintiff's favor on November 6, 2024. The trial court first noted that defendant's affirmative defense was not responsive to plaintiff's claim for declaratory relief, as the appraisal provision expressly provided that the parties do not waive any contractual rights by demanding, or submitting to, an appraisal. Further, the court held that defendant had acknowledged the existence of a covered loss when it prepared an estimate and paid plaintiff and that the dispute was one involving the

"amount of loss," not the scope of coverage. The trial court granted plaintiff's motion for judgment on the pleadings, ordered the matter to appraisal, and stayed the matter until the outcome of the appraisal. This timely appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16     The parties raise a myriad of issues and arguments. We will address each but note that the underlying question is relatively straightforward: did the trial court err in ruling in plaintiff's favor on count I of the amended complaint and compelling the parties to enter appraisal under the policy? For the reasons that follow, we affirm the trial court.

¶ 17                                    A. Jurisdiction

¶ 18     We have jurisdiction over this case under Illinois Supreme Court Rule 307(a)(1), which provides that an appeal may be taken from an interlocutory order granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). An order on a motion to compel appraisal is in the nature of injunctive relief and thus reviewable under Rule 307(a)(1). *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 727 (1990). An appraisal clause is analogous to an arbitration clause, which is both enforceable by a court and subject to compelled compliance. *Id.* "The only question a reviewing court must decide in an interlocutory appeal is whether there was a sufficient showing to sustain the trial court's order granting or denying the relief sought." *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214, 218 (2001) (citing *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 667 (1983)).

¶ 19                          B. Motion for Judgment on the Pleadings

¶ 20     Judgment on the pleadings is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual*

*Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). "In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Souza v. City of West Chicago*, 2021 IL App (2d) 200047, ¶ 42. We take as true all well-pleaded and reasonable inferences and must determine whether any issues of material fact exist. *Id.* If there are no issues of material fact, we must determine whether the movant was entitled to judgment as a matter of law. *Gillen*, 215 Ill. 2d at 385.

¶ 21 Generally, the standard of review for an order granting or denying a motion to compel appraisal is whether the trial court abused its discretion. *Dick-Ipsen v. Humphrey, Farrington & McClain, P.C.*, 2024 IL App (1st) 241043, ¶ 14. Where the trial court renders its decision without an evidentiary hearing and without findings on any factual issues, however, *de novo* review is appropriate. *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). The construction of a contract is a question of law and is also subject to *de novo* review. *FTI International, Inc. v. Cincinnati Insurance Co.*, 339 Ill. App. 3d 258, 259 (2003).

¶ 22 As noted by the trial court, the parties' pleadings agree on the basic facts. There was an active homeowners policy from defendant to plaintiff at the time of the hailstorm. Plaintiff submitted a claim for wind and hail damage that a storm caused to her dwelling. The parties have rival estimates relating to covered loss of the windows of the dwelling. Defendant paid plaintiff $12,677.94 towards this claim, including for the repair of the window frames. The trial court held that these agreed facts were sufficient to trigger plaintiff's right to demand appraisal. Defendant disagrees, claiming that the remaining dispute involves "coverage" and is not appropriate for resolution through appraisal.

¶ 23                                    1. Coverage

¶ 24    In essence, the parties disagree on the definition of coverage. "The term 'coverage' has a narrow and precise meaning, which is the assumption of the risk of occurrence of the event insured against before its occurrence. Coverage issues include the determination of who is insured, the type of risk insured against, and whether the insurance contract exists." 15 Couch on Insurance § 212:12 (3d ed. rev. 2022). Beyond the narrow, legal definition, "coverage" may be used to describe "something that an insurance company will pay for." The Britannica Dictionary, https://www.britannica.com/dictionary/coverage (last visited May 2, 2025) [https://perma.cc/68QC-84TJ]. Defendant repeatedly switched between the legal and lay usage of the term in appellate memoranda and in oral argument before this court.

¶ 25    Much like the building of a house, the framing of an issue provides the structure to legal arguments. Unfortunately for defendant, it has built a legal argument on a foundation of sand. Refusing to pay for a damaged portion of a structure may invoke the lay definition of "coverage," but it does not necessarily raise an issue of "coverage" under the term's legal usage. The "coverage" of the policy, under the legal definition, could be at issue if, for example, the parties disagreed as to whether a detached garage was covered under particularly vague terms. In the immediate matter, however, there can be little doubt that the windows of the home are "covered" under the homeowners policy. There is a dispute as to whether or not said windows were damaged by the storm, but that is not the same as a dispute as to whether the windows were covered by the policy at all. Defendant's refusal to pay for alleged storm damage to windows may be a "coverage" decision under the lay definition, but that refusal leaves open the question of whether "coverage," in the legal sense, extends to storm-related window damage.

¶ 26     The parties agree that plaintiff had a valid insurance policy with defendant and that risk of accidental damage by weather was covered. Defendant has already admitted that the hailstorm caused damage to the trim around some windows on plaintiff's home. Defendant paid plaintiff $12,677.94 towards this damage. Surely, the policy that covers accidental damage to a home would also include the windows installed in that home. It stretches credulity for defendant to now assert that there is a question regarding whether windows are "covered" by the policy. There may be a dispute as to whether the windows were damaged by the hailstorm, but that is not an issue of *coverage*. It is an issue of *loss*. And appraisal is ideally suited to resolve disputes over loss.

¶ 27                                     2. Appraisal and Arbitration

¶ 28     Courts have long held that an appraisal clause is analogous to an arbitration clause, which a court can enforce and with which it may compel compliance. See *Lundy*, 322 Ill. App. 3d at 218-19. In the insurance context, appraisal is most often used to determine the amount of loss and is a relatively limited process when compared to the quasi-judicial nature of arbitration. *FTI International*, 339 Ill. App. 3d at 260-62. It is a well-established principle that arbitration clauses are a favored alternative to litigation by state, federal and common law because they are " 'a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions.' " *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71 (1998) (quoting *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 667-68). Furthermore, the decision whether to compel arbitration is not discretionary; where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it. *Travis*, 335 Ill. App. 3d at 1175. Where the trial court has not held an evidentiary hearing on a motion to

compel arbitration, however, we review the judgment of the court *de novo. Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1105-06 (2001).

¶ 29    Defendant posits that appraisal is not the appropriate forum for disputes involving policy interpretation. Indeed, this court has noted that "the trial court's analysis does not end with whether an arbitration or appraisal clause existed"; the court must also determine if the parties' dispute is covered by the clause. *Lundy*, 322 Ill. App. 3d at 219. Defendant relies on several Illinois decisions to support the assertion that appraisal is appropriate for disputes over the amount of loss rather than over coverage. For example, the court in *Lytle v. Country Mutual Insurance Co.* held that a party "was not entitled to an appraisal on the issue of insurance coverage or contract interpretation." *Lytle v. Country Mutual Insurance Co.*, 2015 IL App (1st) 142169, ¶ 27. While this is an accurate statement, the preceding sentence in *Lytle* puts it into perspective: "Specifically, Lytle disputes whether certain costs associated with complying with building ordinances would be covered under his policy." *Id.* The immediate matter presents no similar questions of policy interpretation.

¶ 30    Plaintiff counters that questions concerning the damage to an insured's property are questions relating to the amount of loss and are appropriate for appraisal. In support of her position, plaintiff cites several federal district court cases and an unpublished Illinois Appellate Court case from the Fifth District, *Shelter Mutual Insurance Co. v. Morrow*, 2023 IL App (5th) 230249-U. Defendant dismisses these cases as contrary to settled Illinois law. We disagree. We may rely on the reasoning of a nonprecedential decision. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) ("[A] nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes."); *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1 (noting that this court may rely on the reasoning in nonprecedential decisions).

¶ 31 Rule 23 dispositions can be persuasive authority, and we find *Morrow* persuasive. As in the immediate matter, the parties in *Morrow* disagreed over the amount of loss incurred during a storm. The insurer acknowledged the covered damage to the property and the court found that "[t]hus, based upon these facts alone, it is evident that the question at issue is not whether a covered loss occurred because a covered loss was found by [the insurer's] own adjuster in its report. Instead, the true dispute of the parties is the amount of that covered loss." *Morrow*, 2023 IL App (5th) 230249-U, ¶ 19. The court went on to state that the issue of the amount of loss falls under the appraisal clause of the policy and to read it in any other manner would completely change the plain meaning of the language used in the clause. *Id.* ¶ 20.

¶ 32 As the trial court in this matter correctly noted, the holding in *Morrow* is in alignment with other holdings from this court. See *Lytle*, 2015 IL App (1st) 142169, ¶¶ 25-27 (holding that appraisal would have been appropriate for a dispute over the amount of a loss but that the specifics of the case involved policy interpretation); *FTI International*, 339 Ill. App. 3d at 260-62 (noting Illinois public policy in favor of appraisal, but finding the dispute over conflicting portions of the insurance policy to be beyond the scope of appraisal); *Lundy*, 322 Ill. App. 3d at 218-19 (holding that a trial court may compel compliance with an appraisal clause but that resolution of the plaintiff's claim required interpretation of the policy language where the plaintiff accused insurer of misrepresentation). And, as noted by plaintiff, there are many examples of federal district courts sitting in diversity and applying Illinois law to similar effect. See *Mouw v. Shelter Mutual Insurance Co.*, No. 22-CV-2306, 2024 WL 707231 (N.D. Ill. Feb. 21, 2024); *Wysoczan v. Cambridge Mutual Fire Insurance*, No. 1:23-CV-00905, 2023 WL 5530535 (N.D. Ill. Aug. 28, 2023); *Culvey v. Auto-Owners Insurance Co.*, 670 F. Supp. 3d 657 (N.D. Ill. 2023); *River Grove Plaza Inc. v. Owners Insurance Co.*, No. 22 C 977, 2022 WL 16782412 (N.D. Ill. Nov. 8, 2022).

While decisions of federal district courts are not binding upon Illinois courts (*City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977)), we can find their interpretation of state law persuasive. *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 21.

¶ 33     In its appellate reply brief, defendant boldly asserts that "[i]t cannot be reinforced enough that this Court has consistently held that appraisal cannot be used to decide questions of causation or scope of the damages." As noted above, we have repeatedly held that appraisal is appropriate for deciding the scope of the damages. We also note that courts in several other jurisdictions have gone further to hold that appraisers were authorized to determine the *cause* of loss when deciding the amount of loss, but that questions of coverage and policy exclusions were still reserved for the courts. *Walnut Creek Townhome Ass'n v. Depositors Insurance Co.*, 913 N.W.2d 80, 91-92 (Iowa 2018) ("appraisers necessarily address causation when determining the amount of the loss from an insured event"); *Quade v. Secura Insurance*, 814 N.W.2d 703, 706-08 (Minn. 2012) (noting that prohibiting appraisers from considering causation would "render appraisal clauses inoperative in most situations"); *Hahn v. Allstate Insurance Co.*, 15 A.3d 1026, 1030-31 (R.I. 2011) (rejecting a causation argument disguised as an issue of coverage); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892-93 (Tex. 2009) ("Indeed, appraisers must always consider causation, at least as an initial matter."); *AIU Insurance Co. v. Lexes*, 815 A.2d 312, 314 (Del. 2003) (holding that appraisers were authorized to determine the cause of a loss in deciding the amount of the loss); *State Farm Fire & Casualty Co. v. Licea*, 685 So. 2d 1285, 1288 (Fla. 1996) (holding that an appraisal "necessarily includes" determining whether damage was caused by a covered loss or normal wear and tear, dry rot, and other designated, excluded causes). Additionally, federal courts sitting in diversity have applied other state laws similarly. *BonBeck Parker, LLC v. Travelers Indemnity Co. of America*, 14 F. 4th 1169, 1178 (10th Cir. 2021) ("We therefore conclude that the Colorado

Supreme Court, if faced with the issue, would join these courts in recognizing that in the insurance context, the ordinary meaning of the phrase 'amount of loss' encompasses causation."); *Philadelphia Indemnity Insurance Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 817-18 (S.D. Ind. 2014) (concluding appraisers must always consider causation); *CIGNA Insurance Co. v. Didimoi Holdings, N.V.*, 110 F. Supp. 2d 259, 264-66 (D. Del. 2000) ("[A]s the Court has discussed, the plain and common meaning of the terms 'amount of loss' and 'loss' in the insurance context includes a causation element.").[1]

_____

[1]We acknowledge that other courts have concluded that appraisers cannot address causation under similar policy language. See, *e.g.*, *Rogers v. State Farm Fire & Casualty Co.*, 984 So. 2d 382, 392 (Ala. 2007) (concluding that the determination of causation "is within the exclusive purview of the courts, not the appraisers"); *Munn v. National Fire Insurance Co. of Hartford*, 115 So. 2d 54, 55 (Miss. 1959) (holding that "the appraisers have no power to determine the cause of the damage"). Defendant notes that some federal district courts sitting in diversity in Illinois concluded that causation is not a matter for an appraiser. *Breckenridge Apartment Homes, LLC v. Greater New York Mutual Insurance Co.*, No. 16 C 50115, 2016 WL 11700913, at *3 (N.D. Ill. Oct. 31, 2016); *Spearman Industries, Inc. v. St. Paul Fire & Marine Insurance Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000). However, these cases are outliers. See, *e.g.*, *Norman v. Standard Fire Insurance Co.*, No. 22-CV-2199, 2023 WL 6018919, at *6 (C.D. Ill. May 15, 2023) ("appraisers may determine issues related to causation"); *Khaleel v. Amguard Insurance Co.*, No. 21 C 992, 2022 WL 425733, *2 (N.D. Ill. Feb. 11, 2022) (noting that "[n]umerous courts within this district" reject the argument that issues implicating causation are not appropriate for appraisal.); *Providence Condominium Ass'n v. Travelers Indemnity Co. of America*, No. 1:20-cv-02659, 2021 WL 12302697, *6 (N.D. Ill. Feb. 19, 2021) (finding cases compelling appraisal despite the presence of causation issues to be more persuasive than those declining to compel); *Runaway Bay Condominium Ass'n v. Philadelphia*

¶ 34    Despite defendant's protestations, we find the law in Illinois clear and unambiguous. A trial court may compel compliance with the appraisal clause of an insurance policy to resolve disputes relating to the "amount of loss." While questions of law and coverage are to be decided by the court, resolving some questions of causation will be necessarily included in the appraisal process. In the immediate matter, the trial court correctly granted plaintiff's motion for judgment on the pleadings and correctly compelled appraisal.

¶ 35                                    C. Late Notice

¶ 36    Finally, we note that the parties also disagree about the timeliness of plaintiff's notification of storm damage. Defendant argues that the trial court erred in concluding that it had waived its claim of policy noncompliance. Plaintiff conversely asserts that the notice delay in this case was not unreasonable and defendant waived the issue when it conducted its investigation and released payment for damages. Unfortunately, both parties mischaracterize the holding of the trial court.

¶ 37    A notice provision can be a valid prerequisite to coverage under an insurance policy. *County Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006). Pursuant to Illinois law, an insured party can be found to have breached an insurance policy if it failed to give notice to the insurer "within a reasonable time." *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 321-22 (1954); *First Chicago Insurance Co. v. Molda*, 408 Ill. App. 3d 839, 846 (2011). The purpose of a notice requirement in an insurance policy is to enable the insurer to make a timely and thorough investigation of the insured's claim. *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 780 (1990). In determining whether a notice is late, Illinois courts—and federal courts

_____

*Indemnity Insurance Cos.*, 262 F. Supp. 3d 599, 600-04 (N.D. Ill. 2017) (noting that courts routinely reject the argument that questions of causation prevent appraisal).

applying Illinois law—have interpreted policy notice requirements to mean that notice must be given within a reasonable time period. See *Livorsi*, 222 Ill. 2d at 316-17; *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2022 IL App (2d) 210506, ¶¶ 15-17. The *Livorsi* court listed five factors to be considered in determining whether notice had been given within a reasonable time. *Livorsi*, 222 Ill. 2d at 312-13.

¶ 38    The parties engage in lengthy discussions over the weight to be given to different factors in this matter, but they are putting the cart before the horse. Count I of the amended complaint sought to compel defendant to participate in appraisal under the terms of the policy. The trial court noted in its written order that the appraisal provision of the policy "expressly provides that the parties 'do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.' " The trial court did not make any specific holding relating to the *validity* of defendant's policy defenses, but it did hold that, as a matter of law, such defenses "have no bearing on [plaintiff's] right to demand an appraisal" under the policy.

¶ 39    In other words, both parties continue to possess all their rights. The trial court did not rule on the validity of defendant's alleged contractual defense. It merely construed the clear language of the policy. Plaintiff correctly demanded appraisal under the policy, but neither party will have waived contractual rights by entering into appraisal. The weight given to plaintiff's delay may be an issue to be resolved if this matter continues beyond appraisal, but the issue does not itself prevent appraisal.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 42    Affirmed.

*Xiang Zhao v. State Farm Fire & Casualty Co.*, **2025 IL App (2d) 240723**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 24-MR-104; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Jonathan W. Goken, Samuel B. Gomolinski, and Thomas M. Wolf, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Christina M. Phillips, of Merlin Law Group, of Chicago, for appellee. |